*Original Lease w/ Scorpion Tenant*

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

𝕬greement of 𝕷ease, made as of this    19th   day of    December   in the year 2014   , between
Dino & Sons Realty Corp. ("Owner" or "Landlord") of 1590 Troy Avenue, Brooklyn, NY 11234
party of the first part, hereinafter referred to as OWNER, and
Scorpion Fitness Inc. ("Tenant") and Scorpion Club Ventures LLC of 325 Fifth Avenue, New York, NY 10016
jointly and severally party of the second part, hereinafter referred to as TENANT,

𝖂itnesseth: Owner hereby leases to Tenant and Tenant hereby hires from Owner

part of the ground floor, mezzanine and lower level as shown in Exhibit "A", attached hereto and made a part hereof

in the building known as and located at  220 Fifth Avenue
in the Borough of  Manhattan                          , City of New York, for the term of
about fifteen (15) years and seven (7) months (the "Term") as defined in Article 41
(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
the "Commencement Date" defined in Article 41, and to end on the
the "Expiration Date" defined in Article 41
both dates inclusive, at the annual rental rate of
$212,477.30 per year from the Commencement Date to the last day of the fourth (4th) "Lease Year" (defined in Article 41);
$262,477.30 per year from the first day of the fifth (5th) Lease Year to the last day of the ninth (9th) Lease Year;
$276,477.30 per year from the firts day of the tenth (10th) Lease Year to the Expiration Date.

(hereinafter called the "Base Rent" subject to adjustments as described in Article 41)
which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues,
public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during
said term, at the office of Owner or such other place as Owner may designate, without any setoff or deduction whatsoever,
except that Tenant shall pay the first $17,706.44 monthly installment(s) on the execution hereof (unless this lease is a renewal).
    In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the
payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner
may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent
payable hereunder and the same shall be payable to Owner as additional rent.
    The parties hereto, for themselves, their heirs, distributes, executors, administrators, legal representative, successors
and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy:** 2. Tenant shall use and occupy the demised premises for

a physical fitness center as the primary use and incidental sale of fitness apparel and refreshments as secondary uses
and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and
shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, commercial general liability, personal and property damage insurance as Owner may require. If an mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of the lease, take good care of the demised premises (including, without limitation, the storefront) and

the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violations, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner, or

Landlord shall not unreasonably withhold or delay approval of Tenant's exterior signage.

PLEASE INITIAL HERE:  LANDLORD ___  TENANT ___

Execution                                    12/19/2014                                Page 1 of 47
                                                                                                          7/04

# STANDARD FORM OF STORE LEASE
## The Real Estate Board of New York, Inc.

**Agreement of Lease**, made as of this    19th    day of    December    in the year 2014   , between

Dino & Sons Realty Corp. ("Owner" or "Landlord") of 1599 Troy Avenue, Brooklyn, NY 11234
party of the first part, hereinafter referred to as OWNER, and

Scorpion Fitness LLC ("Tenant") and Scorpion Club Ventures LLC of 325 Fifth Avenue, New York, NY 10016
jointly and severally party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner

part of the ground floor, mezzanine and lower level as shown in Exhibit "A", attached hereto and made a part hereof

in the building known as and located at  220 Fifth Avenue
in the Borough of  Manhattan                         , City of New York, for the term of
about fifteen (15) years and seven (7) months (the "Term") as defined in Article 41
(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
the "Commencement Date" defined in Article 41, and to end on the
the "Expiration Date" defined in Article 41
both dates inclusive, at the annual rental rate of
$212,477.30 per year from the Commencement Date to the last day of the fourth (4th) "Lease Year" (defined in Article 41);
$262,477.30 per year from the first day of the fifth (5th) Lease Year to the last day of the ninth (9th) Lease Year;
$276,477.30 per year from the firts day of the tenth (10th) Lease Year to the Expiration Date,

(hereinafter called the "Base Rent" subject to adjustments as described in Article 41)

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any setoff or deduction whatsoever, except that Tenant shall pay the first $17,706.44 monthly installment(s) on the execution hereof (unless this lease is a renewal).
     In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.
     The parties hereto, for themselves, their heirs, distributes, executors, administrators, legal representative, successors and assigns, hereby covenant as follows:

**Rent:**         1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy:**    2. Tenant shall use and occupy the demised premises for

a physical fitness center as the primary use and incidental sale of fitness apparel and refreshments as secondary uses
and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:**    3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, commercial general liability, personal and property damage insurance as Owner may require. If an mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

**Repairs:**    4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of the lease, take good care of the demised premises (including, without limitation, the storefront) and

the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:**    5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:**    6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violations, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner, or

Landlord shall not unreasonably withhold or delay approval of Tenant's exterior signage.

PLEASE INITIAL HERE:  LANDLORD ☐  TENANT 

Owner shall request a subordination nondisturbance and attornment agreement from the holder of the existing mortgage but any counsel fees or other expenses of the mortgagee in connection therewith shall be paid for by Tenant.

which shall or might subject Owner to any liability or responsibility to any person, or for property damage. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease, or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or the demised premises issued by a body making fire insurance rates applicable to said demised premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate than applicable to said demised premises.

**Sub-ordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property of Tenant by theft or other wise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building, or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain commercial general liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession of the demised premises and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefore. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease or by the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner, and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the date following the casualty according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionably paid up to the time of the casualty and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by the Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other

*(after five (5) days prior notice) reasonably*

casualty. Notwithstanding anything contained to the contrary in subdivisions (a) through (e) hereof, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other, or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding, and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributes, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority interest in any partnership tenant however or by other means shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any way be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and Tenant may not use any electrical equipment which, in Owner's opinion, reasonable exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no way make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

Landlord shall not unreasonably withhold or delay consent for Tenant to bring in more power at Tenant's expense if necessary and reasonable.

**Access to Premises:** • 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the demised premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes, ducts, and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants, and may, during said six months period, place upon the demised premises the usual notice "to Let" and "For Sale", which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible, by master key or forcibly, and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render owner or its agents liable therefore, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation, and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefore, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other

  Rider to be added if necessary

* Owner's access to the demised premises shall be on reasonable prior notice (which may be oral) except access in an emergency may be without prior notice. Landlord's reconfiguration and alteration under Article 13 shall result in only a de minimus permanent reduction of Tenant's floor area which reduction does not materially interfere with Tenant's use of the Demised Premises.

PLEASE INITIAL HERE:   LANDLORD ☐   TENANT ☐

public parts of the building, and to change the name, number or designation by which the building may be known.

**Vault, Vault Space, Area:**
14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault space shall be paid by Tenant.

**Occupancy:**
15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them "as-is", subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:**
16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant (or a guarantor of any of Tenant's obligations under this lease) as the debtor; or (2) the making by Tenant (or a guarantor of any of Tenant's obligations under this lease) of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant, as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If the demised premises, or any part thereof, be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**
17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall have failed, after five (5) days written notice, to redeposit with Owner any portion of the security deposit hereunder which Owner has applied to the payment of any rent and additional rent due and payable hereunder, or if Tenant shall be in default with respect to any other lease between Owner and tenant; or if Tenant shall fail to move into or take possession of the demised premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner, but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:**
18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner, as liquidated damages, for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorney's fees, brokerage, advertising and for keeping the demised premises in good order, or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable, in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:**
19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice if required, and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter, and without notice, perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefore, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations by Owner:**
20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise, except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as-is", and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:**
21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:**
22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceable and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including,

PLEASE INITIAL HERE: LANDLORD ☐   TENANT 

Landlord represents that the demised premises is now vacant and that Landlord's Work shall be completed with commercially reasonable diligence subject to delays beyond Landlord's reasonable control.

but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:**

23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the demised premises ready for occupancy, or because of the fact that a certificate of occupancy has not been procured, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**

24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of the demised premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of the demised premises prior to the termination of the lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the demised premises.

**Waiver of Trial by Jury:**

25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commence any proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, except for statutory mandatory counterclaims.

**Inability to Perform:**

26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying, any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making, any repair, additions, alterations or decorations, or is unable to supply, or is delayed in supplying, any equipment, fixtures or other materials, if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:**

27. Except as otherwise in this lease provided, any notice, statement, demand or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this lease) and shall be deemed to have been properly given, rendered or made, if sent by registered or certified mail (express mail, if available), return receipt requested, or by courier guaranteeing overnight delivery and furnishing a receipt in evidence thereof, addressed to the other party at the address hereinabove set forth (except that after the date specified as the commencement of the term of this lease, Tenant's address, unless Tenant shall give notice to the contrary, shall be the building), and shall be deemed to have been given, rendered or made (a) on the date delivered, if delivered to Tenant personally, (b) on the date delivered, if delivered by overnight courier or (c) on the date which is two (2) days after being mailed. Either party may, by notice as aforesaid, designate a different address or addresses for notices, statements, demand or other communications intended for it. Notices given by Owner's managing agent shall be deemed a valid notice if addressed and set in accordance with the provisions of this

Article. At Owner's option, notices and bills to Tenant may be sent by hand delivery.

**Water Charges:**

28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes, Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof, and throughout the duration of the Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter, as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises, or any part thereof, be supplied with water through a meter through which water is also supplied to other premises, Tenant shall pay to Owner as additional rent, on the first day of each month. *Landlord to install the water meter at its expense.*

%——————( $                    )
————————of the total meter charges, as Tenant's portion. Independently of, and in addition to, any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:**

29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office, or any bureau, department or official of the federal, state or city government, require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any Insurance Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required, whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $ 200.00       on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service *and central station alarm fee.*

**Elevators, Heat, Cleaning:**

* 30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit, furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 pm. and on Saturdays from 8:00 a.m. to 1:00 pm. Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Owner, and if the demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, keep said sidewalks and curbs free from snow, ice, dirt and rubbish and maintain said sidewalks in a reasonably safe condition in compliance with requirements of law. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:**

31. Tenant has deposited with Owner the sum of $100,000.00     as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent, or any other sum as to which Tenant is in default, or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the reletting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the case of every such use, application or retention, Tenant shall, within five (5) days after demand, pay to Owner the sum so used, applied or retained which shall be added to the security deposit so that the same shall be replenished to its former amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security, and that neither Owner nor its successors

——————— Space to be filled in or deleted

\* Tenant is not responsible for sidewalk repair or replacement unless Tenant or its contractor damages the sidewalk.

PLEASE INITIAL HERE:  LANDLORD ☐  TENANT ☐

Execution                            12/19/2014                            Page 5 of 47

*Landlord will not promulgate or enforce rules and regulations so as to unfairly discriminate against Tenant. If there is any conflict between this lease and the rules and regulations, this lease shall prevail.*

or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**Captions:**   **32.** The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:**   **33.** The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales or conveyance, assignment or transfer of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building, or of the land and building, that the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonable delayed.

**Adjacent Excavation- Shoring:**   **34.** If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work, as said person shall deem necessary, to preserve the wall or the building of which the demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:**   *35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations

or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:**   **36.** Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefore shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:**   **37.** Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the demised premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the demised premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the demised premises, nor permit use of the demised premises for nude modeling, rap sessions, or as a so called rubber goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal, or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal Law §235.00.

**Estoppel Certificate:**   **38.** Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, stating whether or not there exists any defaults by owner under this lease, and, if so, specifying each such default and such other information as shall be required of Tenant.

**Successors and Assigns:**   **39.** The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributes, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

DINO & SONS REALTY CORP.

Witness for Owner: _____   - - - - - - - - - - - - - - - - - - - - - - - -

By: _____

Name: _____                 Title: _____

SCORPION FITNESS, INC.

Witness for Tenant: _____

By: _[signature]_                           _PRESIDENT_

Name: _JOHN SHAMS_                          Title: _____

SCORPION CLUB VENTURES LLC

Witness for Tenant: _____

By: _[signature]_                           _Member_

Name: _JOHN SHAMS_                          Title: _____

## ACKNOWLEDGEMENT of TENANT

**STATE OF NEW YORK,**
                         SS.:
**COUNTY OF**

On the _____ day of _____ in the year _____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

                                            **NOTARY PUBLIC**

                                            _[signature]_

PLEASE INITIAL HERE:  LANDLORD ☐   TENANT _[initials]_

Execution                          12/19/2014                          Page 6 of 47

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives, and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement, shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the lease. As a further inducement to Owner to make the lease, Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the lease or of this guaranty, that Owner and the undersigned shall and do waive trial by jury.

Dated: . . . . . . . . . . . . . . . . . . . . . . in the year . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Guarantor

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Witness

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Guarantor's Residence

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Business Address

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Firm Name

STATE OF NEW YORK                    )
                                     )    ss.:
COUNTY OF                            )

On the          day of            in the year
before me, the undersigned, a Notary Public in and for said State, personally appeared
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                               Notary

## SEE ADDITIONAL RULES AND REGULATIONS ATTACHED HERETO AS EXHIBIT "D"

### IMPORTANT – PLEASE READ

#### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2. If the demised premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4. Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations, or interfere in any way with other tenants or those having business therein.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or fixed by Tenant on any part of the outside of the demised premises or the building, or on the inside of the demised premises if the same is visible from the outside of the demised premises, without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the demised premises. In the event of the violation of the foregoing by Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for Tenant by Owner at the expense of Tenant, and shall be of a size, color and style acceptable to Owner.

6. Tenant shall not mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. Tenant shall not lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used, an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the demised premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8. ~~Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom Tenant requests same in writing. Tenant shall be responsible for all persons for whom it requests such pass, and shall be liable to Owner for all acts of such persons~~

9. Owner shall have the right to prohibit any advertising by Tenant which, in Owner's opinion, tends to impair the reputation of Owner or the building's desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors, to permeate in or emanate from the demised premises.

11. Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which was designated to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in such setting sufficient in Owner's judgment to absorb and prevent vibration, noise and annoyance.

12. Refuse and Trash – Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

**STANDARD FORM OF**

**Store Lease**

The Real Estate Board of New York, Inc.
Copyright 2004. All rights reserved.
Reproduction in whole or in part prohibited.

Address

Premises

TO

Dated

Rent Per Year

Rent Per Month

Term
From
To

in the year

Drawn by . . . . . . . . . . . . . . . .

Checked by . . . . . . . . . . . . . . .

Entered by . . . . . . . . . . . . . . . .

Approved by . . . . . . . . . . . . . . .

PAGE 6

PLEASE INITIAL HERE:  LANDLORD ☐   TENANT

## Article 40.
## ELECTRICITY RIDER

**SECTION I - GENERAL**

Supplementing Article 12, electric current will be supplied to the demised premises at the commencement of the term of this lease in accordance with the provisions of this Section and the Section of this Article (Section II, "rent inclusion"; Section III, "submetering"; or Section IV, "direct electric") which has been identified as the "Electrical Section" in Article 41. As used herein "Laws" shall mean and include all laws, rules, regulations, ordinances, codes and orders of all governmental and quasi-governmental authorities, agencies and departments, and the directions, provisions and requirements thereof and of utility companies, labor agreements and insurance boards, policies, carriers, underwriters and rating bureaus. All notices, requests, demands and consents permitted or required hereunder shall be in writing. All amounts due to Landlord from Tenant hereunder shall be due and payable as additional rent, including, but not limited to, amounts Tenant is required to pay to others if the same are paid for by Landlord or become a lien or claim against the demised premises, the Building or Landlord. Tenant shall use the electric current supplied to the demised premises for lighting, air conditioning and the operation of other machinery, equipment and appliances in the demised premises at term commencement that utilize electric current of the type, and to the extent normally used in connection with the operation of Tenant's business ("Equipment") insofar as Landlord's facilities are not burdened thereby and applicable Laws permit. Tenant's use of electric current shall never exceed the capacity of electrical conductors and equipment in, or otherwise serving the demised premises or existing Building feeders, risers or wires. Tenant's use of electric current in the demised premises shall comply with all applicable Laws. Tenant shall not use any Equipment which, in Landlord's sole judgment, will interfere with the business operations of Landlord or other tenants of the Building. Tenant shall not make any additions or other alterations to electrical facilities or add Equipment without the prior written consent of Landlord in each instance. If, in Landlord's sole judgment, Tenant's electrical requirements necessitate additions or other alterations to electrical facilities, the items will be provided, maintained, repaired, and replaced as necessary by Landlord (or, at Landlord's option, by Tenant) at the sole expense of Tenant if, in Landlord's sole judgment, the same are necessary and will not cause damage or injury to the Building or the demised premises, cause or create a dangerous or hazardous condition, entail excessive or unreasonable alterations, repairs or expenses or interfere with, or disturb Landlord, other tenants or occupants of the Building. Anything contained in this lease to the contrary notwithstanding, with respect to any portion or all of any electrical services and installations permitted or required to be furnished or maintained by Tenant at Tenant's own expense, Landlord, at its option, may elect to furnish or maintain the same at Tenant's expense. Tenant shall use only rigid conduit within the demised premises. Landlord shall not be liable in any way to Tenant for any failure or defect in the supply or character of electric current furnished to the demised premises, for any requirement, act or omission of the Utility Company, or for any loss, damage or expense which Tenant may sustain or incur if either the quantity or character of electric service is changed or is no longer available or suitable for Tenant's requirements. ~~Tenant~~ ~~shall purchase from Landlord and Landlord shall install, at~~ Tenant shall purchase from Landlord and Landlord shall install, at Tenant's expense, all lighting tubes, lamps, bulbs and ballasts used in the demised premises. At any time, and from time to time, Landlord may elect, on at least thirty (30) days prior notice ("Electricity Notice"), to change the method by which Tenant will receive its electricity service in the demised premises. Landlord's Electricity Notice will specify the alternative form of service (i.e., "rent inclusion" under Section II, "submetering" under Section III or "direct electric" under Section IV) and the date on which the then current form of service will end and the alternative form of service will begin, subject only to delays beyond the reasonable control of the parties and the requirements of any Laws. This Section I ("General") will continue to apply along with whatever other Section of this Article is in effect. If Landlord elects to cease furnishing electricity to Tenant (requiring Tenant to obtain electric service directly from the Utility Company) or changes the manner in which electric service is furnished by Landlord (requiring submetering instead of rent inclusion or vice versa) neither such discontinuance, nor such change shall be deemed a lessening or diminution of service within the meaning of any Laws and this lease shall otherwise remain in full force and effect in accordance with its terms. If any tax is imposed in connection with the Landlord's sale or distribution of electric current to Tenant by any federal, state or local government subdivision or authority, Tenant shall pay Landlord the Tenant's Proportionate Share of such tax, to the extent permitted by Laws.

**SECTION II - RENT INCLUSION**

1. As an incident to this Lease and as part of the Annual Base Rent payable hereunder, Landlord shall furnish to Tenant electric current on a so-called "rent inclusion" basis. The portion of the Annual Base Rent attributable to electric current so furnished to Tenant, constituting the Annual Base Rent applicable during the term of this lease less the "Net Annual Base Rent" (referred to in paragraphs (4) and (5) of this Section) is hereinafter referred to as the "Base Electricity Charge". "Base Electricity Charge" means the service classification pursuant to which Landlord purchases electricity from the Utility Company for the Building, taking into consideration all surcharges and charges for demand, energy, fuel adjustments, and "time of day", and taxes and other sums payable in connection therewith. "Base Electric Date" means January 1, 2011. If Landlord grants its consent to additions, or other alterations to existing electrical facilities, and/or Tenant's use of other, or additional Equipment as provided above, Landlord may require an increase in the Base Electricity Charge (and the Annual Base Rent) payable hereunder to reflect the value of the additional electric current to be made available to Tenant for

its Equipment. If Landlord and Tenant do not agree in writing on the amount of such increase, but Landlord consents to such changes in electrical facilities or to the use of other or additional Equipment nevertheless, the amount of the increase shall be determined by the "Consultant" performing a survey as provided in the next paragraph.

2. Landlord may, at any time, retain a reputable independent electrical engineer or electrical consultant, selected by Landlord and paid equally by both parties (the "Consultant"), to make a survey of the electrical wiring and power load of Tenant and determining the value of the electric service provided to Tenant (the "Survey"). The Electric Rate shall be applied to Tenant's usage of electricity (load and demand) to determine what the cost (i.e., value to Tenant) would be if Tenant had purchased its electricity from the Utility Company and any other distributor having distribution charges at the Electric Rate of Landlord for the Building. If the Base Electricity Charge then in effect hereunder is below such value as determined by such Consultant, the Base Electricity Charge (and the Annual Base Rent) shall be increased to fully reflect such value. The findings of such Consultant, in all such instances, shall be final, binding and conclusive upon the parties. Any increase in the amount of the Base Electricity Charge from such a survey shall be effective as of (A) the date the Survey was performed, or (B) if the survey is conducted during the first six (6) months of the term, the commencement of the term of this lease. The retroactive increase in the Base Electric Charge shall be due within ten (10) days after it is first billed. However, if and to the extent that an increase in the Base Electricity Charge determined by the Consultant is due to changes in Equipment, electrical facilities or the Electric Rate as of a particular date, the Consultant shall specify the effective date for the increase in the Base Electricity Charge. Tenant shall cooperate with the Consultant and shall promptly provide copies of records, purchase orders and the like as the Consultant, in his or her sole and absolute discretion shall request to aid in such determination.

3. If, after the Base Electric Date, the Electric Rate is increased (due to changes in, or replacement of the Utility Company's rate schedule for the Building or any increase in, or additions to any of the charges, surcharges or taxes for supplying electric current to the Building), the Base Electricity Charge shall be increased by the percentage of any increase in Landlord's cost for purchasing electricity for the Building. If Tenant disputes the amount of the increase in writing sent to Landlord within twenty (20) days after Landlord bills Tenant in writing for the increased amount, the amount of such percentage increase shall be determined by the Consultant chosen by Landlord and paid equally by Landlord and Tenant. The Consultant shall take Landlord's average demand and consumption (as reflected in Landlord's electric bills from the Utility Company) for the twelve (12) month period that immediately precede the date the Electric Rate changed; that average demand and consumption shall be applied to the Electric Rate in effect during such twelve (12) month period to derive an agreed cost before the change in the Electric Rate; the same average demand and consumption shall be applied to the new Electric Rate to derive an agreed cost after the change in the Electric Rate; the amount of such percentage increase shall be determined by the Consultant chosen by Landlord and paid equally by Landlord and Tenant. The Consultant shall take Landlord's average demand and consumption for the twelve (12) month period to derive an agreed cost after the change in the Electric Rate; the annual Base Electricity Charge then in effect shall be determined by using a fraction whose numerator is the difference between the aforesaid agreed costs after and before the change and whose denominator is the agreed cost before the change. The Consultant's determination shall be final, binding and conclusive. Nothing contained herein shall be deemed to provide for a reduction in the Base Electricity Charge unless Landlord gives its Electricity Notice to cease providing electric service on a rent inclusion basis, in which case paragraphs (4) and (5) of this Section will apply.

4. If Landlord exercises its right to cease furnishing electric service on a "rent inclusion" basis, this lease shall continue in full force and effect and shall not be affected thereby, except that, from and after the effective date of such discontinuation, Landlord shall not be obligated to furnish electric current to Tenant (except as provided in the next Section relating to submetering, if Landlord elects to furnish submetering service) and the Annual Base Rent payable hereunder from and after the date on which rent inclusion ends, shall be reduced to an applicable Net Annual Base Rent per year. Anything contained in this lease to the contrary notwithstanding, if this lease (or any subsequent written agreement between the parties amending this lease) provides for any increase in the Annual Base Rent other than due to an increase in the Base Electricity Charge, the Net Annual Base Rent shall be increased by the amount of each and every such increase so that any reduction in the Annual Base Rent due to the termination of electric service on a rent inclusion basis as described herein shall not exceed the annual Base Electricity Charge immediately prior to the date on which such termination becomes effective.

5. If the Electrical Section identified in Article 41 is this Section II: rent inclusion was the initial form of electric service provided for in this lease; the Net Annual Base Rent was specified in Article 41; and the initial Base Electricity Charge was included in the Annual Base Rent at the inception of the term. If Article 41 does not specify the Net Annual Base Rent, the Landlord's Electricity Notice containing its election to provide electricity on a rent inclusion basis shall specify the initial Base Electricity Charge; and the Net Annual Base Rent shall be the Annual Base Rent as previously set forth in this lease. If Tenant disputes the initial Base Electricity Charge specified in Landlord's Electricity Notice, Landlord shall have such initial Base Electricity Charge determined by the Consultant under paragraph (2) of this Section.

PLEASE INITIAL HERE: LANDLORD ☐   TENANT

Execution         12/19/2014         Page 8 of 47

## SECTION III - SUBMETERING

1. "Electrical Consultant" means an independent electrical engineer or electrical consulting firm selected by Landlord. "Usage" means actual usage of electricity in the demised premises, inclusive of electricity for the HVAC Systems serving the demised premises, as measured by the Submeter to be installed by Landlord for each calendar month or such other period as Landlord shall determine and shall include the quantity usage and peak demand (kilowatt hours and kilowatts). "Landlord's Rate" means the average cost per kw/kwh for supply and delivery (including all applicable taxes, surcharges, demand charges and rates, energy charges and rates, fuel adjustment charges, time of day charges and other charges, adjustments and sums payable in respect thereof) pursuant to which Landlord presently or hereafter purchases electric current for the Building from the utility company supplying electric current to the Building, or the equivalent rate in effect from time to time during the Term, which shall be utilized as the rate structure for the determination of Basic Cost, as if (i) the only electric current being purchased directly from the supplier of electricity to the Building were the Usage and (ii) no other electricity were being purchased for the entire Building. "Basic Cost" means the product of (a) Usage and peak demand multiplied by (b) Landlord's Rate, for the period that corresponds to the period during which Usage was measured. "Electricity Cost" means an amount equal to one hundred seven percent (107%) of the Basic Cost. "Electrical Consultant" means an independent electrical engineer or electrical consulting firm selected by Landlord.

1.01. Subject to Section 1.08, Landlord shall furnish electrical service to the demised premises through existing Building feeders, risers and wiring installations. Landlord shall, at its sole expense, install one (1) submeter and other necessary equipment to measure the amount of Usage (the "Submeter") and shall maintain, repair and replace the Submeter.

1.02. Not more frequently than once a month, Landlord shall deliver to Tenant an invoice for the period during which the Usage was measured and the amount of Electricity Cost payable by Tenant for such period. Within ten (10) Business Days after receipt of each such invoice, Tenant shall pay the invoiced Electricity Cost. If any tax is imposed upon Landlord for the purchase, sale or resale of electrical energy, then, to the extent permitted by Law, such taxes shall be passed on to and paid by Tenant.

1.03. Landlord does not represent or warrant that the electrical service to the demised premises is or will be sufficient for Tenant's electrical needs. Unless caused by Landlord's willful acts, Landlord shall not liable or responsible for any Loss that Tenant may suffer if the quantity or character of electrical service is changed, is no longer available, or is unsuitable for Tenant's needs.

1.04. Tenant shall not use or install anything that could result in an overload of the electrical circuits servicing the demised premises.

1.05. (a) Tenant's use of electric current shall never exceed the capacity of the feeders to or the risers or wiring installation of the Building. All installations, alterations and additions of and to the electrical distribution system in the Premises shall be subject to Landlord's prior written approval in each instance (which approval shall not be unreasonably withheld or delayed); but, Landlord's prior written approval shall not be required for the installation, alteration or addition of and to the electrical distribution system for normal office equipment used in executive administrative and general office use. If, in connection with any request for such approval, Landlord shall, in its reasonable judgment, determine that additional risers, feeders, wiring installation or other equipment are needed, Landlord shall, at the cost and expense of Tenant, install such additional equipment that Landlord shall deem necessary; but, if Landlord shall determine, in its sole judgment, that the same will cause permanent damage to the Building or to the demised premises, create a dangerous or hazardous condition, entail excessive or unreasonable alterations, repairs, or expense, interfere with, or disturb, other occupants of the Building, or adversely affect Landlord's ability to supply electricity to other portions of the Building, then Landlord shall not be obligated to make such installation, Landlord's approval shall be deemed denied and Tenant may not make such installation. All of the aforesaid costs and expenses shall be payable within ten (10) Business Days after delivery of any bill or statement to Tenant therefor.

(b) Tenant shall furnish, install and replace, as required, all Bulbs in the demised premises at its sole cost and expense; but, Landlord shall install all Bulbs initially required in the demised premises as part of Landlord's Work. All Bulbs shall become Landlord's property. All fluorescent fixtures shall be lamped with Building standard bulbs and lenses.

1.06. If the Submeter or any submetering system installed at a later date becomes prohibited from use, then Landlord, at its expense, may cause its Electrical Consultant to survey and determine Usage in, and Basic Cost for, the demised premises, at least once per twelve (12) month period, and the Electrical Consultant shall determine Usage using criteria generally accepted in the metropolitan New York City area and Landlord's Rate in effect at the time, and shall include the quantity and peak demand, for all electricity consumed by Tenant. The Electrical Consultant's determination shall be binding on Landlord and Tenant and such amount shall be deemed to be the Electricity Cost.

1.07. Tenant shall have the right to contest any amount determined by the Electrical Consultant pursuant to Section 1.06. If Tenant fails to deliver a Notice (an "Objection Notice") to Landlord within sixty (60) days after the date of the Electrical Consultant's notice of determination, the notice of determination shall be binding upon Tenant. If the Objection Notice is properly given, Tenant shall, at its sole cost and expense, have the right to

engage an electrical engineer or electrical consulting firm ("Tenant's Consultant") to promptly survey Tenant's electrical usage in the demised premises (the "Disputing Survey"). If Landlord and Tenant are unable to agree on the amount of Usage and Basic Cost within thirty (30) days after the date Landlord receives a copy of the Disputing Survey, then the Electrical Consultant and Tenant's Consultant shall select a mutually acceptable electrical engineer or electrical consulting firm (the "Third Consultant") within ten (10) days after the expiration of such thirty (30) day period. The dispute shall be submitted to the Third Consultant and the Third Consultant's determination shall be final. During the pendency of any such dispute, Tenant shall pay to Landlord the amount set forth in the Electrical Consultant's notice until the dispute is finally determined in accordance with the provisions of this Section 1.07. If such final determination is less than the amount set forth in the Electrical Consultant's notice, Landlord shall, at Tenant's election, refund to Tenant the amount of such excess payment or credit any such excess against any amounts then due or becoming due to Landlord under this Lease. The cost of the Third Consultant shall be borne equally by Landlord and Tenant.

1.08. If it is physically possible for Tenant to receive the electric service described in Section 1.01 without material additional cost to Tenant, directly from one or more of the utility companies then serving the area where the Building is located, Landlord may discontinue electrical service upon thirty (30) days' notice to Tenant without being liable to Tenant therefor and without in any way affecting this Lease or the liability of Tenant hereunder, and the same shall not be deemed to be a diminution of services within the meaning of any Law. If Landlord gives such notice of discontinuance, Landlord shall permit Tenant to receive such service directly from one (1) utility company and shall permit Landlord's wires and conduits, to the extent safely capable, to be used for such purpose. Any additional wires, conduits, or other equipment necessary in connection therewith shall be installed by Landlord in accordance with the terms of, and subject to the conditions contained in this Article 1. If Landlord exercises its rights under this Section 1.08, then: (a) Tenant shall contract for electrical service directly with the utility company for Tenant's electric current requirements and (b) Landlord shall have no obligation to supply or furnish electric current. If Tenant is diligently and in good faith arranging to obtain electricity directly from said utility company, Landlord may not discontinue the electric service to the demised premises until Tenant is able to contract directly for, and actually receive, such electric service. All equipment which may be required to obtain electricity of substantially the same quantity, quality and character as Landlord is obligated to furnish under Section 1.01, shall be installed by Landlord: (1) at Landlord's expense, if Landlord voluntarily discontinued furnishing electricity to the demised premises, or (2) at Tenant's expense, if Landlord was compelled to discontinue furnishing electricity to the demised premises due to any improper act or omission of Tenant, or (3) at the equal expense of Landlord and Tenant, if such discontinuance was required by Law and not by any act or omission of Tenant.

## SECTION IV - DIRECT ELECTRIC

Tenant shall arrange to obtain all electric current for the demised premises directly from the Utility Company. Tenant shall pay all bills rendered by the Utility Company for such electric current. Such electric current may be provided to Tenant by means of the then existing Building feeders, risers and other installations, to the extent that the same are available, suitable and safe for such purposes. All meters and additional panel boards, switches, feeders, risers, wiring and other conductors and equipment which are necessary to obtain electric current directly from the Utility Company shall be furnished, installed, maintained and repaired by Tenant, at its expense subject to Landlord's prior written consent. If more than ninety percent (90%) of the occupied space in the Building receives electric service directly from the Utility Company, Tenant shall pay Landlord the Tenant's Proportionate Share of all costs incurred by Landlord to provide electricity for the Building within ten (10) days after being billed. A copy of Landlord's electricity bills for the Building from the Utility Company shall be sufficient evidence of Landlord's costs therefor. Tenant shall pay Landlord the Tenant's Proportionate Share of Landlord's costs to increase the electrical capacity of the Building, or, if Tenant will have access to a percentage of such additional capacity greater than the Tenant's Percentage set forth in Article 41, Tenant shall pay Landlord the percentage that reflects Tenant's proportionate share. Such payments shall be made within ten (10) days after being billed.

Landlord may elect to utilize the services of an alternative electricity service provider ("ASP") rather than the Utility Company in which event, Tenant shall pay for its use of electricity as billed by the ASP or Landlord. Landlord shall incur no expenses whatsoever with respect to any aspect of ASP's provision of its services. Any and all expenses incurred by Landlord in connection with the supervision of the ASP shall be at the expense of Tenant and/or ASP. Landlord's and Tenant's use of the ASP shall not be deemed to be any kind of warranty or representation by Landlord, including, without limitation, any representation as to the suitability or competence of the ASP. Tenant agrees that all electricity services obtained by Tenant from the ASP shall be at the sole expense of Tenant. Landlord shall have the right at any time and from time to time during the Term to contract with, or to require Tenant to contract for electricity service with, a new or different ASP and/or with the Utility Company.

¹ provided that the charges of any new ASP are commercially reasonable competitive prices.

PLEASE INITIAL HERE:  LANDLORD ☐  TENANT

RIDER TO LEASE DATED December 19, 2014 BETWEEN Dino & Sons Realty Inc., AS LANDLORD, AND Scorpion Fitness Inc. and Scorpion Club Ventures LLC, AS TENANT FOR part of the ground floor, mezzanine and lower level (the "demised premises") AT 220 Fifth Avenue, NEW YORK, NY 10022 (the "Building")

If and to the extent that any of the provisions of this rider conflict or are otherwise inconsistent with any of the printed provisions of this lease, whether or not such inconsistency is expressly noted in this rider, the provisions of this lease shall prevail.

41.    Miscellaneous Definitions

A.    The Electrical Section in Article 40 is Section III ("Submetering").

B.    The term of this Lease (the "Term") shall commence on the date (the "Commencement Date") that is the earlier to occur of (i) the date that Landlord gives notice to Tenant (in the form attached hereto as Exhibit #1) which correctly states that "Landlord's Work" (defined in Exhibit "B", attached hereto and made a part hereof) is substantially complete and (ii) the date that Tenant takes possession of the demised premises, whichever of those dates shall occur first. The Term shall expire, unless sooner terminated as in this lease provided, on the last day of the month in which the fifteenth (15th) anniversary of the "Rent Date" (defined below) shall occur. Once the Commencement Date, the Rent Date and the Expiration Date are known, the parties shall sign and deliver a memorandum to confirm those date but their failure or refusal to do so shall not affect the dates determined in accordance with the provisions of this lease.

C.    The "Rent Date" shall mean the date that is two hundred ten (210) days after the Commencement Date. Tenant's obligations to pay Base Rent shall abate in the interval from the Commencement Date to the day before the Rent Date. All of Tenant's monetary obligations (including, but not limited to, Tenant's obligation to pay for electricity) other than the obligation to pay Base Rent shall start as of the Commencement Date. The first advance installment of monthly Base Rent being paid to Landlord by Tenant upon execution shall be applied as the monthly installment of Base Rent for the month in which the Rent Date occurs. If the Rent Date is not the first day of the month, on the first day of the month which follows the Rent Date, the first installment of monthly Base Rent shall be prorated, and an appropriate credit shall be issued to Tenant to reflect the portion of the month in which the Rent Date occurred that elapsed prior to the Rent Date.

D.    If Tenant is not in default under this lease and it remains in full force and effect, the monthly Base Rent in and for the month in which the first (1st) anniversary of the Rent Date occurs shall abate.

E.    "Lease Year" shall mean successive periods of twelve (12) calendar months with the first (1st) Lease Year to start on the first day of the month in which the Commencement Date occurs, except if the Commencement Date is the first (1st) day of the month, in which case the first (1st) Lease Year would start on the Commencement Date.

F.    The Fixed Escalation Percentage in Article 68 is three percent (3%).

G.    If this lease shall be terminated for a default of Tenant prior to the second anniversary of the Rent Date, the eight (8) months of Base Rent abatements described in the foregoing provisions of this Article shall be due and payable by Tenant to Landlord as additional rent if previously issued and waived by Tenant if and to the extent not previously issued.

H.    "Laws", "compliance with law" and words of similar import shall mean and include all laws, rules, regulations, ordinances and requirements of governmental and quasi-governmental authorities, agencies and departments having jurisdiction and the directions, orders, provisions, recommendations and requirements thereof and of utility companies, labor agreements and insurance boards, companies, policies, carriers, underwriters and rating bureaus.

42.    Rental Payments

A.    All payments other than Base Rent to be made by Tenant pursuant to this lease shall be deemed additional rent and, in the event of any non-payment thereof, Landlord shall have all rights and remedies provided for herein or by law for non-payment of rent.

1

Please Initial Here:  Landlord_____  Tenant

B.    All payments of Base Rent and additional rent to be made by Tenant pursuant to this lease shall be made by checks drawn upon a New York City bank which is a member of the New York Clearing House Association or any successor thereto.

C.    If Landlord receives from Tenant any payment less than the sum of the Base Rent and additional rent then due and owing pursuant to this lease, Tenant hereby waives its right, if any, to designate the items to which such payment shall be applied and agrees that Landlord in its sole discretion may apply such payment in whole or in part to any Base Rent, any additional rent or to any combination thereof then due and payable hereunder.

D.    Unless Landlord shall otherwise expressly agree in writing, acceptance of Base Rent or additional rent from anyone other than Tenant shall not relieve Tenant of any of its obligations under this lease, including the obligation to pay Base Rent and additional rent, and Landlord shall have the right at any time, upon notice to Tenant, to require Tenant to pay the Base Rent and additional rent payable hereunder directly to Landlord. Furthermore, such acceptance of Base Rent or additional rent shall not be deemed to constitute Landlord's consent to an assignment of this lease or a subletting or other occupancy of the demised premises by anyone other than Tenant, nor a waiver of Landlord's rights or Tenant's obligations under this lease.

43.    <u>Tax Escalation</u>

A.    For purposes hereof:

(1)    "Real Estate Taxes" shall mean all real estate taxes, assessments, sewer and water rents, governmental levies, municipal taxes, or any other governmental charge (including, without limitation, a business improvement district charge ["BID Charge"]), general or special, ordinary or extraordinary, unforeseen as well as foreseen, of any kind or nature whatsoever, which are or may be assessed, levied or imposed upon all or any part of the Building and/or the land upon which it is erected ("Land") under the laws of the United States, the State of New York, or any political subdivision thereof, or by the City of New York, or any political subdivision thereof, and any tax or assessment hereafter imposed in whole or in part in substitution for any such taxes, assessments, sewer and water rents, levies or other charges. In the event that the Base Year Taxes shall include any BID Charge and any such BID Charge is subsequently discontinued or eliminated, then, as of the date of such discontinuance or elimination, the Base Year Taxes shall be recalculated as if the BID Charge had not originally been included therein.

(2)    "Base Year Taxes" shall mean the Real Estate Taxes as finally determined for calendar year 2014, i.e., the last half (1/2) of the fiscal tax year that ends on June 30, 2014 and the first half (1/2) of the fiscal tax year that begins on July 1, 2014, hereinafter called the Base Tax Period.

(3)    "Subsequent Year" shall mean any tax fiscal year commencing on or after July 1, 2014.

(4)    "Tenant's Proportionate Share" shall mean four and nine tenths percent percent (4.9%).

B.    If the Real Estate Taxes for any Subsequent Year during the Term exceed the Base Year Taxes (as initially imposed, if not finally determined when a payment is due pursuant to subdivision (C) of this Article), Tenant shall pay Landlord Tenant's Proportionate Share of such excess.

C.    Such payment shall be due within fifteen (15) days after the Real Estate Taxes for any Subsequent Year become due, or, if Real Estate Taxes are payable in installments, the appropriate portion of such payment (based on the number of such installments) shall be due within fifteen (15) days after the date each such installment is due. If the Base Year Taxes ultimately are less than the Real Estate Taxes initially

2
Please Initial Here: Landlord_____ Tenant

imposed upon the Land and Building for the Base Tax Period, Tenant shall pay Landlord, promptly upon demand, any additional amount thereby payable pursuant to subdivision (B) for all applicable Subsequent Years.

D.    If Landlord receives any refund of Real Estate Taxes for any Subsequent Year for which Tenant has made a payment pursuant hereto, Landlord shall (after deducting from such refund all expenses incurred in connection therewith) pay Tenant, if not in default hereunder, Tenant's Proportionate Share of the net refund.  If Landlord succeeds in reducing any assessed valuation for the Land and Building prior to the initial billing of Real Estate Taxes, Tenant also shall pay Landlord Tenant's Proportionate Share of the expenses so incurred by Landlord.

E.    If any Subsequent Year is only partially within the Term, all payments pursuant hereto shall be appropriately prorated, based on the portion of the Subsequent Year which is within the Term.  Except as limited by Articles 9 and 10:  (1) Tenant's obligation to make the payments required by subdivisions (B), (C) and (D) of this Article shall survive the Expiration Date or any sooner termination of this lease; and (2) Landlord's obligation to make the payments required by subdivision (D) shall survive the Expiration Date or any sooner termination of this lease pursuant to Articles 9 and 10.

F.    Tenant's right to a refund for overpayment of tax escalation charges shall survive expiration of the term.  A reduction in Real Estate Taxes for the Base Tax Period shall not result in retroactive additional rental payments under this Article for payments paid by Tenant under this Article prior to such reduction.

44.    Restrictions on Use

A.    Anything in Article 2 to the contrary notwithstanding, Tenant shall not use or permit all or any part of the demised premises to be used for the: (1) storage for purpose of sale of any alcoholic beverage in the demised premises; (2) storage for retail sale of any food or beverage in the demised premises other than packaged prepared foods and beverages or the operation of a healthy snack bar or counter without cooking for limited on premises consumption; (3) conduct of a manufacturing, printing or electronic data processing business, except that Tenant may operate business office reproducing equipment, electronic data processing equipment and other business machines for Tenant's own requirements (but shall not permit the use of any such equipment by or for the benefit of any party other than Tenant); (4) cooking; (5) conduct of the business of an employment agency or executive search firm; (6) conduct of any public auction, gathering, meeting or exhibition; (7) conduct of a stock brokerage office or business; (8) occupancy of a foreign, United States, state, municipal or other governmental or quasi-governmental body, agency or department or any authority or other entity which is affiliated therewith or controlled thereby and which has diplomatic or sovereign immunity or the like with respect to a commercial lease; (9) any residential use whatsoever.

B.    Tenant shall not use or permit all or any part of the demised premises to be used so as to impair the Building's character or dignity or impose any additional burden upon Landlord in its operation.

C.    Tenant shall not obtain or accept for use in the demised premises ice, drinking water, food, beverage, towel, barbering, boot blacking, floor polishing, lighting maintenance, cleaning or other similar services from any party not theretofore approved by the Landlord, such approval not to be unreasonably withheld, conditioned or delayed .  Such services shall be furnished only at such hours, in such places within the demised premises and pursuant to such regulations as Landlord prescribes.

D.    Except for Landlord's Work, Tenant acknowledges that it has inspected and is fully familiar with the Building and the demised premises, and agrees that Landlord shall not be obligated to make any improvements or alterations to the demised premises to prepare it for Tenant's occupancy or otherwise, and that Tenant covenants

3
Please Initial Here: Landlord_____ Tenant_____

and agrees to accept the demised premises on the Commencement Date in "as is" condition subject only to the performance of Landlord's Work. Tenant acknowledges that nothing contained herein, and no consent or approval which may be issued by Landlord in connection with Tenant's alterations or otherwise shall constitute an express or implied representation of Landlord that the demised premises or the Building (with or without any alteration) will be suitable, feasible or lawful for any general or specific use, purpose or requirement of Tenant. All work required to enable Tenant to use the demised premises for the use permitted under this lease shall be provided by Tenant at its sole cost and expense pursuant to plans, drawings and specifications therefor prepared by Tenant and submitted to, and approved by Landlord (such approval not to be unreasonably withheld, conditioned or delayed), subject to the provisions of this lease and the requirements of Laws.

        E.      The demised premises is to be delivered and accepted subject to all Laws, including, but not limited to, zoning laws and the Certificate of Occupancy for the Building or the demised premises, if any, as the case may be, and any required application for any variance, special permit or Certificate of Occupancy (or amendments thereto) or otherwise shall be obtained by Tenant at its sole expense if and as required by Laws in order for Tenant to engage in the use permitted under this lease. However, Tenant shall make no application for any variance, special permit or any new or amended certificate of occupancy without Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed. Landlord shall reasonably cooperate in any such application made by Tenant with Landlord's approval, and sign Tenant's applications as reasonably necessary to evidence such approval, but without liability of Landlord under the application.

        F.      Nothing contained herein shall relieve Tenant of its obligation at its sole cost and expense to apply for, obtain, comply with, and keep in effect all necessary licenses, permits and approvals from the applicable governmental and quasi-governmental agencies, departments and authorities which is now and/or hereafter required by Laws for Tenant to engage in the use permitted under this lease from time to time at Tenant's own expense, including, but not limited to, any required license from the The Department of Consumer Affairs of the City of New York. Tenant shall not open for business to the public in the demised premises without first having complied with this paragraph. Nothing contained herein shall constitute Landlord's representation that Tenant can obtain any such license, permit or approval.

45.     Assignment, Etc.

        Supplementing Article 11:
        A.      "Disposition" means an assignment, release or reassignment (in whole or in part) of this lease, a sublease of all or part of the demised premises, or a license, concession or other agreement to permit any or all of the demised premises to be used or occupied by any other party. A sub-sublease, sub-assignment or the cancellation, renewal or other material modification of any Disposition shall be deemed to be a new Disposition. A change of ownership or control of Tenant (or of the entity that owns or controls Tenant), shall be deemed to be an assignment of this lease without regard to whether or not the change is effected in one or a series of related transactions. No Disposition shall be made without Landlord's prior written consent, except if and as expressly provided otherwise in this lease. The "Effective Date" of a sublease, assignment or other Disposition means the date on which the sublease term will begin, or the assignment or other Disposition will become effective.

        B.      Every assignment of this lease must provide that the assignee assumes the payment and performance of Tenant's obligations under this lease as if it had executed it as the original Tenant; and that Landlord and the assignee may modify this lease in any manner, without notice to the assignor or the assignor's prior consent, without thereby terminating any assignor's joint and several liability under this lease, except that any such modification that, in any way, increases an assignor's liability shall not, to the extent of such increase only, be binding upon the assignor.

4

Please Initial Here: Landlord_____ Tenant_____

C.  Every sublease of the demised premises, in whole or in part, shall be subject and subordinate to this lease in all respects and must include the following:

"In the event of a termination of any underlying lease, the subtenant hereunder shall, at the option of the lessor under any such lease ('Underlying Lessor'), attorn to and recognize the Underlying Lessor as sublandlord hereunder and shall, promptly upon the Underlying Lessor's request, execute and deliver all instruments necessary or appropriate to confirm such attornment and recognition. Notwithstanding such attornment and recognition, the Underlying Lessor shall not (i) be liable for any previous act or omission of the sublandlord under this sublease, (ii) be subject to any offset, not expressly provided for in this sublease, which shall have accrued to the subtenant hereunder against said sublandlord, (iii) be bound by any modification of this sublease or by any prepayment of more than one month's rent, unless such modification or prepayment shall have been previously approved in writing by the Underlying Lessor, or (iv) be obligated to afford rights or provide services in excess of or different than those required to be furnished to the sublandlord as the tenant under the Underlying Lease for the space to which this sublease relates. The subtenant hereunder hereby waives all rights under any present or future law to elect, by reason of the termination of such Underlying Lease, to terminate this sublease or surrender possession of the premises demised hereby. This sublease may not be assigned or the premises demised hereunder further sublet, in whole or in part, without the prior written consent of the Underlying Lessor."

D.  Subject to the provisions of Article 11 and the other applicable provisions of this lease, if Tenant is not in default, Landlord shall not unreasonably withhold its prior written consent to a Disposition in the form of an assignment of this lease or a sublease of all of the demised premises by Tenant provided that: Tenant gives written notice to Landlord at least thirty (30) days, but not more than one hundred twenty (120) days prior to the Effective Date requesting Landlord's prior written consent, and such notice is delivered to Landlord together with executed duplicate originals of the assignment or sublease and any and all other agreements that will have been made in connection with the Disposition, and the agreements have been signed and delivered subject to receipt of Landlord's prior written consent; and, at least ten (10) days prior to the Effective Date, Tenant furnishes Landlord with such other such other documents and information as Landlord may reasonably require to substantiate compliance with the provisions of this lease, to evaluate the financial strength and suitability of the other party to the Disposition, and be fully informed of all relevant facts when it decides whether or not to issue its consent to the Disposition.

E.  The foregoing notwithstanding, no Disposition shall be made with any of the following: a prospective tenant (or its designee) who is discussing with Landlord (or Landlord's agent) its need for space in the Building, or who has so negotiated within the previous six (6) months; a current tenant, subtenant or occupant of space in the Building or the subsidiary, affiliate, parent, or successor thereof, or of any such successor or related entity. Tenant shall list the demised premises for any sublease of all or substantially all of the demised premises or any assignment of this lease with Landlord's leasing agent pursuant to the Landlord's leasing agent's standard listing agreement and Tenant shall pay the commission of the Landlord's leasing agent as provided therein when the Disposition is effected by Tenant and approved by Landlord hereunder.

F.  If a Disposition requires performing work for the purpose of subdividing the demised premises (e.g., construction of new demising walls to create a separate independently serviceable unit of space) or other alterations, such Disposition and the alterations described therein shall require Landlord's prior written consent and approval. Landlord may refuse to consent to any subdivision of the demised premises into more than one independent unit of space. No sublease of any kind (including, but not limited to, any sublease effected under paragraph J of this Article) shall provide for subdivision of the demised premises through creation of separate entrances, construction of demising walls or otherwise.

G.  Neither Landlord's consent to any Disposition, nor any Disposition made at any time shall release Tenant from its liability for the performance of Tenant's obligations

Please Initial Here: Landlord_____ Tenant

hereunder before, during or after any such Disposition, or constitute Landlord's consent required for any other, or further Disposition, or Landlord's approval of any alterations described therein, or in any other or further Disposition. Landlord may collect payments from an assignee, subtenant or occupant and apply the net rent received to Tenant's obligations without accepting the payor as a direct tenant of Landlord, and without having such acts constitute Landlord's consent to an assignment, subletting or other Disposition, or a release of Tenant.

H. Anything contained in this lease to the contrary notwithstanding, except for Dispositions described in paragraph J of this Article, within twenty (20) days after Landlord's receipt of Tenant's notice requesting Landlord's consent to an assignment of this lease or the subletting of the demised premises, in whole or in part, Landlord maygive notice electing to cancel this lease effective as of either (i) the Effective Date of the proposed Disposition, or (ii) as of the last day of the month occurring sixty (60) days after such notice of cancellation is given, at Landlord's option. If Landlord shall give its cancellation notice as provided in this paragraph, the Term shall end on the effective date of cancellation specified therein as if such date had always been the original Expiration Date of this lease. If Landlord does not elect to cancel under the foregoing provisions of this paragraph and Landlord consents to the sublease or assignment, then if the monthly rental which Tenant receives from a sublease for all or any portion of the demised premises permitted hereunder is greater than a sum equal to the percentage of the total area of the demised premises which is sublet multiplied by Tenant's rent (i.e., Base Rent and additional rent) per month, one-half (1/2) of the difference between said sums (less Tenant's reasonable legal fees, brokerage commissions and any alteration expenses paid and incurred in connection with the sublease) shall be paid to Landlord each month as additional rent. One-half (1/2) of any and all consideration required to be paid to Tenant by an assignee in connection with an assignment permitted hereunder (less Tenant's reasonable legal fees, brokerage commissions and any alterations expenses paid and incurred in connection with the assignment) shall be paid to Landlord by Tenant as additional rent.

I. Tenant shall pay to Landlord, promptly upon demand therefor, all reasonable costs and expenses (including, but not limited to, reasonable attorneys' fees and disbursements), if any, incurred by Landlord in connection with any Disposition whether or not Landlord consents thereto.

J. The foregoing notwithstanding, if Tenant is not bankrupt or in default (after notice and grace period to cure) under this lease, the Tenant named herein may, on thirty (30) days prior written notice to Landlord, without Landlord's prior written consent, (A) assign this lease to a "Successor", or (B) sublet a portion of the demised premises (without subdividing the demised premises into more than one independently serviceable unit of space through construction of demising walls, separate entrances and the like) to a "Subsidiary" or "Affiliate". A "Successor" of Tenant shall mean: (i) a corporation, partnership, association or limited liability company in which or with which Tenant is merged or consolidated, in accordance with applicable statutory provisions for merger or consolidation of corporations, associations, partnerships or limited liability companies provided that by operation of law or by effective provisions contained in the instruments of merger or consolidation, the liabilities of the entities participating in such merger or consolidation are assumed by the entity surviving such merger or created by such consolidation, or (ii) a corporation or other entity acquiring this lease and the other property and assets of Tenant. Acquisition by Tenant, of a substantial portion of the assets, together with the assumption of all or substantially all of the obligations and liabilities of any corporation or other entity, shall be deemed a merger of such corporation or other entity into Tenant for the purposes hereof. However, upon the completion of any merger, consolidation, sale, acquisition or assumption described above in this Article, the Successor must have a net worth (exclusive of "goodwill") no less than the greater of: (i) Tenant's net worth immediately prior to such merger, consolidation, sale, acquisition or assumption; and (ii) Tenant's net worth immediately prior to execution and delivery of this lease. A "Subsidiary" shall mean any corporation, partnership or limited liability company more than fifty percent (50%) of whose outstanding stock, membership, ownership and voting interests shall, at all times, be

owned by Tenant. An "Affiliate" shall mean any corporation or other entity having as the owner of more than fifty percent (50%) of its outstanding stock, ownership, membership and voting interests, the same person or entity that owns more than fifty percent (50%) of the outstanding stock, voting and ownership interests of Tenant at all times. Any other or further assignment or subleasing of all or part of the demised premises shall be subject to all applicable provisions of this lease including, without limitation, the requirement that Tenant obtain Landlord's prior written consent in each instance as provided in this lease. If any Subsidiary or Affiliate shall cease to be a Subsidiary or Affiliate of Tenant, any sublease or assignment to it must end, and Tenant shall cause the subtenant or assignee to vacate the demised premises forthwith. A Subsidiary or Affiliate that enters into possession of any portion of the demised premises shall be and remain jointly and severally liable for the obligations of Tenant for the balance of the Term of this lease. Tenant must furnish Landlord with such documents and information as Landlord may reasonably require to substantiate relationships, conditions and transactions described herein prior to the commencement of the sublease term or the effective date of the assignment, and the executed assignment of Tenant and assumption of the assignee or the fully executed sublease, as the case may be. The aforesaid assignment and assumption must provide that the assignee agrees to pay, keep, perform and observe all terms, provisions, covenants and conditions contained in this lease on the Tenant's part to be paid, kept, performed and observed as if it had executed this lease as the initial Tenant without relieving the assignor of joint and several liability to Landlord. The aforesaid sublease must provide that it is subject and subordinate to this lease in all respects.

46.    Air Conditioning

A.    Notwithstanding anything contained in this Lease to the contrary, except if and as expressly provided otherwise in Exhibit "B", Tenant hereby agrees that Landlord shall not be required to supply, maintain, repair or service any air conditioning system in or servicing the demised premises, and the air conditioning system and related ductwork and equipment to be located in and/or servicing the demised premises shall be furnished, installed, operated, repaired replaced and maintained as necessary to keep the same in good working order and condition and in compliance with laws by Tenant at Tenant's sole expense. Tenant shall enter into a service contract for the air conditioning system serving the demised premises with a reputable company approved by Landlord and provide Landlord with a copy thereof and shall maintain such service contract in effect for the Term at Tenant's expense.

B.    Tenant shall operate, repair, replace and maintain the air conditioning system serving the demised premsies at Tenant's sole expense as necessary to keep the same in good working order and condition and in compliance with laws throughout the Term and return the air conditioning system in place when the Term ends in good condition and in compliance with laws. Any inspection, permit or license required for the operation of the air conditioning system shall be obtained by Tenant and kept in effect at Tenant's expense. Landlord shall cooperate reasonably with Tenant's application for any such required inspection, permit or license, without Landlord having any liabilty for such application.

C.    If, despite Tenant having properly operated and maintained the air conditioning system, a major repair or replacement (i.e., compressor or fan motor failure) of the air conditioning unit not covered by Tenant's Landlord approved service contract and not caused by Tenant's negligence, willful misconduct or alterations of Tenant shall become necessary, Landlord shall perform such repair with Tenant to pay the "Adjusted Cost" thereof. As used herein, "Adjusted Cost" means the total reasonable cost of Landlord for the repair or replacement multiplied by a fraction whose numerator is the nearest whole number of years then remaining in the unexpired balance of the term of this lease and whose denominator is fifteen (15).

47.    Brokerage

Please Initial Here: Landlord_____  Tenant

Tenant represents that it dealt only with Signature Partners LLC ("Broker") in connection with this lease and Landlord shall pay the Broker's commission therefor pursuant to separate written agreements with the Brokers. Tenant shall indemnify Landlord against any liability and expense (including, with limitation, reasonable attorney's fees) for any brokerage commission or finder's fee in connection with this lease asserted by any broker, agent or finder other than the Broker based on the alleged actions of Tenant or its agents or representatives with the claimant. Tenant's liability hereunder shall survive any expiration or termination of this lease. Landlord represents that it dealt only with the Broker.

47A.    Tenant's Alterations

Supplementing the provisions of Article 3 hereof:

A.    All alterations of Tenant shall be subject to Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. However, Tenant may, on prior notice to Landlord, without Landlord's prior written consent, perform interior non-structural alterations, installations or improvements which have no material adverse effect on the Building, its systems or facilities to renovate the demised premises for Tenant's occupancy ("Tenant's Work"), provided that Tenant's Work shall be performed in compliance with all of the other applicable provisions of this lease and in compliance with laws in a good and workmanlike manner using new first class materials.

B.    Tenant shall indemnify, defend and hold Landlord harmless on demand from and against any and all claims, damages, costs, fees and expenses arising from or relating to any Tenant's Work and any and all other alterations of Tenant. Tenant shall repair, replace and maintain as necessary to keep in good working order and condition and in compliance with law anything altered or installed in connection with Tenant's Work and any and all other alterations of Tenant.

C.    Supplementing Article 3, Landlord's consent shall not be required for minor changes to the demised premises such as the installation of superficial decorations, furniture, furnishings, cabinets and shelves which are not affixed to the realty. All other renovations, signs, additions, installations, improvements and alterations of any kind or nature in or to the demised premises whether performed by Tenant or by Landlord (collectively, "Tenant Changes") shall require the prior written consent of Landlord which, in the case of a non-structural interior Tenant Changes, Landlord agrees not to unreasonably withhold, condition or delay. In granting its consent to any Tenant Changes, Landlord may impose such reasonable conditions as Landlord may reasonably require. In no event shall Landlord be required to consent to any Tenant Changes that would adversely affect the structure of the Building, the exterior thereof, any part of the Building outside of the demised premises or the mechanical, electrical, heating, ventilation, air conditioning, sanitary, plumbing or other service systems and facilities (including elevators) of the Building. Tenant Changes shall be performed only by contractors designated or approved by Landlord (which approval shall not be unreasonably withheld or delayed) in accordance with plans, drawings and specifications prepared by Tenant at its own expense and submitted to, and approved in writing by Landlord. In connection with Landlord's review, modification, approval, supervision and/or coordination of Tenant Changes, Tenant shall, promptly upon demand, reimburse Landlord for any reasonable out-of-pocket fees, expenses and other charges incurred by Landlord or its agent in connection with the review, modification and/or approval of such plans and specifications by Landlord and its agents and consultants. Tenant shall promptly provide such evidence as Landlord may request to substantiate any such costs incurred by Tenant. Tenant shall, at its sole cost and expense, in making any Tenant Change, comply with all requirements of Local Law 5 of 1973 of The City of New York and the Americans With Disabilities Act, as heretofore and hereafter amended, as well as all other applicable Laws.

8
Please Initial Here:  Landlord_____  Tenant

D. Nothing in this lease is intended to constitute a consent by Landlord to the subjection of Landlord's or Tenant's interest in the Building to any lien or claim by any person that performs and/or supplies any work, labor, material, service or equipment to Tenant for any Tenant Change. Landlord hereby notifies all such persons of such intent and each such person agrees that by performing any Tenant Changes for Tenant it accepts that Landlord has not granted such consent and that such person shall not have a right to file any lien or claim against such interest of Landlord or Tenant in the Building or land upon which it is located. All materials and equipment to be incorporated in the demised premises as a result of all Tenant Changes shall be new and first quality; no such materials or equipment shall be subject to any lien, encumbrance, chattel mortgage, title retention or security agreement. Tenant shall not, at any time prior to or during the term of this lease, directly or indirectly employ, or permit the employment of, any contractor, mechanic or laborer in the demised premises, whether in connection with any Tenant Changes or otherwise, if, in Landlord's sole discretion, such employment will interfere or cause any conflict with other contractors, mechanics, or laborers engaged in the construction, maintenance or operation of the Building by Landlord, Tenant or others. In the event of any such interference or conflict, Tenant, upon demand of Landlord, shall cause all contractors, mechanics or laborers causing such interference or conflict to leave the Building immediately.

E. Nothing contained in this lease, and no consent or approval which may be issued by Landlord at any time with respect to Tenant Changes or otherwise, shall constitute any express or implied representation by Landlord that the demised premises or the Building (with or without any Tenant Change) will be suitable, feasible or lawful for any general or specific use, purpose or requirement of Tenant. Nothing contained herein shall relieve Tenant of its obligations to repair, replace and maintain as necessary anything altered or installed by or for Tenant as necessary to keep the same in good working order and condition and in compliance with laws at Tenant's expense.

F. Tenant shall have all of its contractors furnish evidence of insurance in forms, amounts, carriers and coverages reasonably satisfactory to Landlord; and naming Landlord and its agent and mortgagees as additional insureds in all liability policies, and containing waiver of subrogation and release in favor of Landlord, its agents and mortgagees in all property policies.

G. Tenant's alterations shall be subject to Tenant's compliance with Exhibit "C", attached hereto and made a part hereof.

49.    Building Directory/Signage

A.    Tenant shall not require use of the ground floor lobby building directory.

B.    All exterior signage, displays and the like or interior signage, displays and the like, visible from the outside of the demised premises shall be of first-class quality and appearance. The parties acknowledge that the storefront and the exterior of the demised premises and the Building may now be or may hereafter become subject to local laws or requirements of the Landmarks Preservation Commission, historic preservation district status and the like that may regulate items visible from the street in addition to signs and exterior alterations and Tenant will comply at its own expense with any and all of those regulations and requirements for the demised premises, including, but not limited, those relating to the storefront, signs and exterior thereof. Landlord has the right to use, repair, maintain and replace the facade and exterior elements of the Building and its appurtenances to comply with laws, to upgrade the exterior of the Building and properly operate the Building and Landlord's exercise of such right shall not be a breach of the lease, a constructive, partial or actual eviction of Tenant or cause any rent abatement or release of Tenant. Landlord shall use commercially reasonable efforts to minimize the extent and duration of any scaffolding or other interference (without an obligation to incur overtime or premium pay) and shall allow Tenant to install reasonable temporary signage at Tenant's expense on the exterior of any scaffold in front of the demised premises. Tenant, at its own expense, shall provide, clean, maintain, repair and replace its storefront and

9

Please Initial Here: Landlord_____ Tenant_____

signage as necessary to comply with laws and to keep the same in attractive and first class condition and free of graffiti.

C.    Tenant covenants and agrees to apply for, secure, maintain and comply with all licenses or permits which may be required by laws for the conduct by Tenant of the business herein permitted to be conducted in the demised premises and to pay, if, as and when due all license and permit fees and charges of any nature in connection therewith, including, but not limited to, sign permits and approvals for its signage. Landlord shall cooperate reasonably with Tenant's application for any such permit, approval or license, without Landlord having any liabilty for such application.

50.    Limitation of Liability

A.    Anything herein to the contrary notwithstanding, Landlord's liability for its negligence or failure to perform its obligations hereunder shall be limited to its interest in the Land and Building. Tenant shall neither seek to enforce nor enforce any judgment or other remedy against any other asset of Landlord or any party who holds any interest in Landlord. Tenant will not have any right to satisfy any judgment that it may have against Landlord, or any successor, from any other assets of Landlord, or any successor. "Landlord" and "successor" include the shareholders, beneficial owners, members, venturers, and/or partners of "Landlord" and/or "successor" and the officers, directors, trustees and employees of "Landlord" and/or "successor." Anything contained in this lease to the contrary notwithstanding, in no event shall Landlord be liable to Tenant for any consequential, indirect, special, exemplary or punitive damages..

B.    Landlord and Landlord's agents, officers, directors, and employees shall not be liable for any of the following, however caused, other than by gross negligence or wilful acts: (a) failure of any utility service, telephone, wireless or wired voice/data, internet or other telecommunications services, (b) damage to Tenant's property on the demised premises caused by or resulting from any cause whatsoever, including explosion, falling plaster, vermin, smoke, gasoline, oil, Hazardous Materials, steam, gas, electricity, earthquake, subsidence of land, hurricane, tornado, flood, wind or similar storms or disturbances or water, rain, ice or snow which may be upon, or leak or flow from, any street, road, parking lot, sewer, gas main or subsurface area, or from any part of the Building, or leakage of gasoline, oil or other substances from pipes, pipelines, appliances, storage tanks, sewers or plumbing works in or at the Building, or from any other place, or from the breaking of any electrical wire or the breaking, bursting or leaking of water or Hazardous Materials from any plumbing or sprinkler system, or any other pipe or storage tanks in, on, under or about the Building, (c) interference with light or other incorporeal hereditaments, and (d) loss by theft or otherwise of Tenant's property or the property of any person claiming through or under Tenant. Any employees of Landlord to whom any property shall be entrusted by or on behalf of Tenant shall be deemed to be acting as Tenant's agents with respect to such property and neither Landlord nor Landlord's agents shall be liable for any loss or for damage to any such property by theft or otherwise. This paragraph shall not be construed as a provision for indemnification.

51.    Submission to Jurisdiction, Etc.

A.    This lease shall be deemed to have been made in New York County, New York, and shall be construed in accordance with the laws of the State of New York. All actions or proceedings relating, directly or indirectly, to this lease shall be litigated only in courts located within the County of New York. Tenant, any guarantor of the performance of its obligations hereunder ("Guarantor") and their successors and assigns hereby subject themselves to the jurisdiction of any state or federal court located within such county, waive the personal service of any process upon them in any action or proceeding therein and consent that such process be served by certified or registered mail, return receipt requested, directed to the Tenant and any successor at Tenant's address hereinabove set forth, to Guarantor and any successor at the address set forth in the instrument of guaranty and to any assignee at the address set forth in the instrument of assignment. Such service shall be deemed made two days after such process is so mailed.

10

Please Initial Here: Landlord_____ Tenant

B.     Whenever any default, request, action or inaction by Tenant causes Landlord to incur attorneys' fees and/or any other costs or expenses, Tenant agrees that it shall pay and/or reimburse Landlord for such fees, costs or expenses within fifteen (15) days after being billed therefor.

C.     If any monies owing by Tenant under this lease are paid more than ten (10) days after the date such monies are payable pursuant to the provisions of this lease, Tenant shall pay Landlord interest thereon, at the then maximum lawful rate, for the period from the date such monies were payable to the date such monies are paid. In addition, any Base Rent or additional rent not paid within ten (10) days after it becomes due shall be subject to an administrative fee of two percent (2%) of the late payment or $200.00, whichever is greater.

D.     The submission of this lease to Tenant shall not constitute an offer by Landlord to execute and exchange a lease with Tenant and is made subject to Landlord's acceptance, execution and delivery thereof.

E.     If any provision of this lease shall be held to be invalid or unenforceable, the remainder of this lease shall be valid and enforceable to the fullest extent permitted by law.

F.     This agreement shall be a binding and enforceable contract from and after the date on which it has been signed and delivered by both parties without regard to whether or not the term of this lease and Tenant's rights to occupy the demised premises have commenced as of such date of full execution and delivery of this instrument under the other provisions of this lease.

G.     The meaning and effect of this lease shall not be determined subject to any presumption against Landlord as drafter. The doctrine of *ejusdem generis* shall not be applied to limit a general description to the same class or category of things or matters contained in the list (or specific description) which the general description follows or otherwise relates to.

52.     Modifications Requested by Mortgagee

If any prospective mortgagee of the Land, Building or any leasehold interest therein requires, as a condition precedent to issuing its loan, the modification of this lease in such manner as does not materially lessen Tenant's rights or increase its obligations hereunder, Tenant shall not delay or withhold its consent to such modification and shall execute and deliver such confirming documents therefor as such mortgagee requires.

53.     Cleaning; Sorting and Separation of Refuse and Trash

A.     Landlord shall not be providing any cleaning services to the demised premises. The cleaning contractor employed by Tenant to clean the demised premises shall not cause any labor disharmony or otherwise adversely affect the Building. Landlor reserves the right to approve Tenant's cleaning service contractor, such approval not to be unreasonably withheld, conditioned or delayed.

B.     Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, and municipal governments, departments, commissions, and boards regarding the collection, sorting, separation, and recycling of waste products, garbage, refuse, and trash. Tenant shall sort and separate such waste products, garbage, refuse, and trash into such categories as provided by law. Each separately sorted category of waste products, garbage, refuse, and trash shall be placed by Tenant in separate receptacles reasonably approved or provided by Landlord. Landlord reserves the right to refuse to collect or accept from Tenant any waste products, garbage, refuse, or trash that is not separated and sorted as required by law. Tenant shall have Tenant's trash removed at Tenant's expense. Tenant shall obtain and pay for trash collection and removal services relating to any of Tenant's alterations or any other unusual or excessive trash of Tenant subject to such rules and procedures as Landlord may reasonably prescribe.

11

Please Initial Here: Landlord_____ Tenant

C.    Tenant use of any dumpsters or trash receptacles in the basement for storage, collection and removal of its trash and garbage shall be subject to such rules and regulations as Landlord may reasonably prescribe, including, but not limited to the areas of the basement that may be used for such purposes and the times and manner of storage and collection of Tenant's trash and garbage.

D.    Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Landlord or Tenant by reason of Tenant's failure to comply with the provisions of this Article, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Landlord harmless (including reasonable legal fees and expenses) from and against any actions, claims, and suits arising from such noncompliance by Tenant and its agents, employees and contractors, utilizing counsel reasonably satisfactory to Landlord.

54.    Private Elevator Service. Fire Staircase and Display Window

A.    Tenant shall have exclusive use of the existing private elevator servicing the demised premises. The private elevator shall be operated, maintained, repaired and replaced by Tenant as necessary to keep the same in good working order and condition and in compliance with law at Tenant's sole expense. Tenant shall enter into a service contract for the private elevator with a reputable company reasonably approved by Landlord and provide Landlord with a copy thereof and shall maintain such service contract in effect at Tenant's expense starting promptly after Landlord has done the elevator work described in item #12 of Exhibit "B" for the balance of the Term. Landlord makes no warranty or representation concerning the private elevator other than as described in Exhibit "B". Tenant's property and liability insurance shall cover damage to, and the use and operation of the private elevator and Tenant shall indemnify, defend and hold Landlord harmless on demand from and against any and all claims, demands, damages, costs, fees and expenses arising from or relating to the private elevator except if and to the extent due to the negligence or willful misconduct of Landlord or its agents, employees or contractors.

B.    Tenant shall have non-exclusive use of the existing staircase adjacent to, and servicing the demised premises. Tenant shall keep such staircase free of Tenant's trash, litter and obstructions and clean the staircase as necessary.

C.    Tenant shall have exclusive use of one (1) display window accessible to the demised premises and shall keep it in a clean and attractive condition subject to Landlord's approval of any signage and decoration contained therein.

55.    Attornment

A.    In the event of the enforcement by the mortgagee under any mortgage to which this lease is subordinate of the remedies provided in such mortgage or by law, Tenant will, upon request of any person succeeding to the interest of Landlord as a result of such enforcement, automatically become the lessee of said successor of interest, without change in the terms or other provisions of this lease, provided, however, that such successor in interest shall not be bound by (A) any payment of Base Rent or additional rent for more than one month in advance, except prepayments in the nature of security for the performance by Tenant of its obligations under this lease, or (B) any amendment or modification of this lease made without the consent of such mortgagee or such successor in interest. In addition, upon the request of said successor in interest, Tenant shall execute and deliver an instrument or instruments confirming such attornment.

B.    Landlord shall use good faith best efforts to obtain a subordination, nondisturbance and attornment agreement in favor of Tenant from the holder of any existing mortgage and any future leases or mortgages that this lease is subordinate to.

56.    Insurance

A.    During the Term Tenant shall pay for and keep in force general liability policies in standard form (i.e. containing no non-standard, special and/or unusual exclusions or restrictive

12

Please Initial Here: Landlord_____ Tenant

endorsements) protecting against any and all liability occasioned by accident or occurrence, such policies to be written by recognized and well-rated insurance companies authorized to transact business in the State of New York, in the amount of $5,000,000 per occurrence (combined single limit) for property damage, personal injury or death (which may be provided in the form of a $1,000,000 underlying policy plus a $4,000,000 umbrella). If at any time during the Term it appears that public liability or property damage limits in the City of New York for premises similarly situated, due regard being given to the use and occupancy thereof, are higher than the foregoing limits, then Tenant shall increase the foregoing limits accordingly. Landlord shall be named as an additional insured on a primary basis in the aforesaid insurance policies and the policies shall provide that Landlord shall be afforded thirty (30) days prior notice of cancellation or material modification of said insurance. Not less than ten (10) days prior to the Commencement Date and, upon the renewal of such policies, not less than thirty (30) days prior to the expiration of any such policies, Tenant shall deliver certificates of insurance satisfactory to Landlord evidencing such policies. All premiums and charges for the aforesaid insurance shall be paid by Tenant and if Tenant shall fail to make such payment when due, Landlord may make such payment and the amount thereof shall be repaid to Landlord by Tenant on demand and the amount thereof may, at the option of Landlord, be added to and become a part of the additional rent payable hereunder. Tenant shall not violate or permit to be violated any condition of any of said policies and Tenant shall perform and satisfy the requirements of the companies writing such policies.

B.      Landlord and Tenant shall each endeavor to secure an appropriate clause in, or an endorsement upon, each fire or extended coverage policy obtained by it and covering the building, the demised premises, or the personal property, fixtures and equipment located therein or thereon, pursuant to which the respective insurance companies waive subrogation or permit the insured, prior to any loss, to agree with a third party to waive any claim it might have against said third party. The waiver of subrogation or permission for waiver of any claim hereinbefore referred to shall extend to the agents of each party and its employees and, in the case of Tenant,shall also extend to all other persons and entities occupying or using the demised premises in accordance with the terms of this Lease. If, and to the extent that, such waiver or permission can be obtained only upon payment of an additional third party charge, then, except as provided in the previous paragraph, the party benefiting from the waiver or permission shall pay such charge upon demand, or shall be deemed to have agreed that the party obtaining the insurance coverage in question shall be free of any further obligations under the provisions hereof relating to such waiver or permission.

C.      In the event that Landlord's insurance company shall set the amount of any additional charge payable by Landlord as set forth in Paragraph B of this Article on either a tenant-by-tenant or premises-by-premises basis, then the amount that shall be payable by Tenant thereunder shall be the amount so levied by the insurance company with respect to Tenant or the demised premises. If, however, the amount of such additional charge or additional premium, as the case may be, shall not be levied on a tenant-by-tenant basis or a premises-by-premises basis, but, instead, shall be levied as a blanket additional charge or additional premium with respect to Tenant and other tenants of the Building or with respect to the demised premises and other portions of the Building demised to other tenants, then the amount payable by Tenant shall be an amount equal to five percent (5%) of the additional charge so levied.

D.      Subject to the foregoing provisions of this Article, and insofar as may be permitted by the terms of the insurance policies carried by it, each party hereby releases the other with respect to any claim (including a claim for negligence) that it might otherwise have against the other party for loss, damage, or destruction with respect to its property by fire or other casualty (including rental value or business interruption, as the case may be) occurring during the term of this Lease that is covered by such insurance policies.

57.      Bankruptcy

Without limiting any of the provisions of Articles 16, 17 or 18 hereof, if pursuant to the Bankruptcy Code of 1978, as the same may be amended, Tenant is permitted to assign this lease in disregard of the restrictions contained in Articles 11 and 44 hereof, Tenant agrees that adequate assurance of future performance by the assignee permitted under such Code shall mean the deposit of cash security with Landlord in an amount equal to the sum of one year's Base Rent

13

Please Initial Here: Landlord_____ Tenant

then reserved hereunder plus an amount equal to all additional rent payable under this lease for the calendar year preceding the year in which such assignment is intended to become effective, which deposit shall be held by Landlord, without interest, for the balance of the Term as security for the full and faithful performance of all of the obligations under this lease on the part of Tenant yet to be performed. If Tenant receives or is to receive any valuable consideration for such an assignment of this lease, such consideration, after deducting therefrom (A) the brokerage commissions, if any, and other expenses reasonably incurred by Tenant for such assignment and (B) any portion of such consideration reasonably designated by the assignee as paid for the purchase of Tenant's property in the demised premises, shall be and become the sole and exclusive property of Landlord and shall be paid over to Landlord directly by such assignee. In addition, adequate assurance shall mean that any such assignee of this lease shall have a net worth, exclusive of good will, equal to at least fifteen (15) times the aggregate of the Base Rent reserved hereunder plus all additional rent for the preceding calendar year as aforesaid.

58.    Local Law 5

    Supplementing Article 6 hereof,

    A.    All work performed or installations made by Tenant (or by Landlord at Tenant's request and expense) in and to the demised premises shall be done in a fashion such that the demised premises and the Building shall be in compliance with the requirements of Local Law 5 of 1973 of The City of New York, as heretofore and hereafter amended ("Local Law 5"). The foregoing shall include, without limitation, (i) compliance with the compartmentalization requirements of Local Law 5, (ii) relocation of existing fire detection devices, alarm signals and/or communication devices necessitated by the alteration of the demised premises, and (iii) installation of such additional fire control or detection devices as may be required by applicable governmental or quasi-governmental rules, regulations or requirements (including, without limitation, any requirements of the New York Board of Fire Underwriters) as a result of Tenant's manner of use of the demised premises.

    B.    Unless due to Landlord's negligence or willful misconduct, Landlord shall not be responsible for any damage to Tenant's fire control or detection devices nor shall Landlord have any responsibility for the maintenance or replacement thereof. Tenant shall indemnify Landlord from and against all loss, damage, cost, liability or expense (including, without limitation, reasonable attorneys' fees and disbursements) suffered or incurred by Landlord by reason of the installation and/or operation of any such devices.

    C.    All work and installations required to be undertaken by Tenant pursuant to this Article shall be performed at Tenant's sole cost and expense and in accordance with plans and specifications and by contractors previously approved by Landlord.

    D.    The fact that Landlord shall have heretofore consented to any installations or alterations made by Tenant in the demised premises shall not relieve Tenant of its obligations pursuant to this Article with respect to such installation or alterations.

59.    Estoppel Certificate

    Tenant, at any time, and from time to time, upon at least ten (10) days' prior notice by Landlord, shall execute, acknowledge and deliver to Landlord, and/or to any other person, firm or corporation specified by Landlord ("Recipient"), a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the Base Rent and additional rent have been paid, stating whether or not there exists any defaults by Landlord under this lease, and, if so, specifying each such default and any other matters reasonably requested by Landlord or the Recipient.

60.    Holdover

    In the event Tenant shall hold over after the expiration of the Term, the parties hereby agree that Tenant's occupancy of the demised premises after the expiration of the Term shall be upon all of the terms set forth in this lease except Tenant shall pay as rent for the holdover period

14

Please Initial Here: Landlord_____ Tenant_____

an amount equal to the higher of (A) an amount equal to two (2) times the sum of (1) the pro rata Base Rent payable by Tenant during the last year of the Term and (2) all monthly installments of additional rent payable by Tenant pursuant to the terms of this lease that would have been billable monthly by Landlord had the Term not expired; or (B) an amount equal to the then market rental value for the demised premises as shall be established by Landlord giving notice to Tenant of Landlord's good faith estimate of such market rental value.

61.    Conditional Limitation

In the event Tenant shall default beyond applicable notice and any cure period after notice in the payment of the Base Rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required for a total of two (2) months, whether or not consecutive, in any twelve (12) month period, and Landlord shall have served upon Tenant petitions and notices of petition to dispossess Tenant by summary proceedings in each such instance, then, notwithstanding that such default may have been cured prior to the entry of a judgment against Tenant, any further default in the payment of any money due in the twelve (12) months following said second (2nd) default, Landlord hereunder shall be deemed to be deliberate and Landlord may serve a written five (5) days' notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof, and Tenant shall then quit and surrender the demised premises to Landlord, but Tenant shall remain liable as elsewhere provided in this lease.

62.    Utilities

Tenant shall pay for any and all utility services used for or consumed in the demised premises relating to Tenant's alteration, occupancy, use or operation of the demised premises at any time prior, during and after the Term, including, but not limited to, all rents, rates, fees and charges for water, public or private sewer, electric, gas and other utilities furnished to the demised premises. As used herein, "utility services" shall include, but not be limited to, energy charges (for water, electricity, gas, steam and any other fuel), internet, cable and any other voice/data services, and wired or wireless local and long distance telephone charges. Tenant's use of any utility services shall not exceed or overload the capacity of any existing installations of the Building. Any and all taxes, fees, connection charges and deposits required to obtain utility services for Tenant (and all work associated therewith) shall be paid for by Tenant and Tenant shall maintain an account in its own name with the provider of the utility service unless this agreement expressly provides otherwise.

If Tenant uses any gas, Landlord shall install a gas meter and Tenant shall pay Landlord for the gas used and meter reading charges as additional rent when and as billed by Landlord.

Landlord shall install a water meter at Tenant's expense and Tenant shall pay Landlord for the water used and meter reading charges as additional rent when and as billed by Landlord.

63.    Additional Default Remedy

In the event of the termination of this lease or of Landlord's re-entry into the demised premises by or under any summary dispossess or other proceeding or action, or any provision of law, by reason of Tenant's default hereunder, Tenant shall pay to Landlord as damages, at the election of Landlord, either (A) a sum which at the time of such termination of this lease or at the time of any such re-entry by Landlord, as the case may be, represents the then value of the excess, if any, of (1) the aggregate of the Base Rent and the additional rent payable hereunder which would have been payable by Tenant (conclusively presuming that additional rent on account of increases in Real Estate Taxes shall increase at the average of the rates of increase thereof previously experienced by Landlord during the period [not to exceed three (3) years] prior to such termination) for the period commencing with such earlier termination of this lease or the date of any such re-entry, as the case may be, and ending with the Expiration Date, had this lease not so terminated or had Landlord not so re-entered the demised premises, over (2) the aggregate rental value of the demised premises for the same period, or (B) the damages computed pursuant to Article 18(c) hereof.

15

Please Initial Here: Landlord_____ Tenant_____

64.    <u>Limitation on Rent</u>

If on the Commencement Date, or at any time during the Term, the Base Rent or additional rent reserved in this lease is not fully collectible by reason of any Federal, State, County or City law, proclamation, order or regulation, or direction of a public officer or body pursuant to law (collectively, "Law"), Tenant agrees to take such steps as Landlord may request to permit Landlord to collect the maximum rents which may be legally permissible from time to time during the continuance of such legal rent restriction (but not in excess of the amounts reserved therefor under this lease). Upon the termination of such legal rent restriction, Tenant shall pay to Landlord, to the extent permitted by Law, an amount equal to (A) the Base Rent and additional rent which would have been paid pursuant to this lease but for such legal rent restriction, less (B) the Base Rent and additional rent paid by Tenant to Landlord during the period such legal rent restriction was in effect.

65.    <u>Acceptance of Keys</u>

If Landlord or Landlord's managing or rental agent accepts from Tenant one or more keys to the demised premises in order to assist Tenant in showing the demised premises for subletting or other disposition or for the performance of work therein for Tenant or for any other purpose, the acceptance of such key or keys shall not constitute an acceptance of a surrender of the demised premises nor a waiver of any of Landlord's rights or Tenant's obligations under this lease including, without limitation, the provisions relating to assignment and subletting and the condition of the demised premises.

66.    <u>Landlord's Consent</u>

Where Landlord's consent or approval is required under this lease and provision is herein made that such consent or approval shall not be unreasonably withheld or delayed, the failure or refusal of Landlord to grant such consent or approval, or Landlord's delay in granting the same, shall not in any way subject Landlord to any claim for damages or otherwise, it being understood that Tenant's sole remedy in the event Landlord shall withhold or delay its consent or approval shall be to seek either a declaratory judgment or injunctive relief only.

67.    <u>Building Work</u>

Landlord, throughout the Term, shall have reasonable access to any and all mechanical installations of Landlord, including but not limited to air-cooling, fan, ventilating, machine rooms and electrical closets.    All parts (except surfaces facing the interior of the demised premises) of all walls, windows and doors bounding the demised premises (including exterior Building walls, exterior core corridor walls, exterior doors and entrances), all balconies, terraces and roofs adjacent to the demised premises, all space in or adjacent to the demised premises used for shafts, stacks, stairways, chutes, pipes, conduits, ducts, fan rooms, heating, air cooling, plumbing and other mechanical facilities, service closets and other Building facilities are not part of the demised premises, and Landlord shall have the use thereof, as well as reasonable access thereto through the demised premises for the purposes of operation, maintenance, alteration, improvement, replacement and repair. Landlord and Landlord's designees including, without limitation, Landlord's engineers, architects and contractors, shall have the right to enter the Premises at all reasonable times upon reasonable prior notice (which notice may be oral), to (i) examine the demised premises for any purpose, including , without limitation, for the purpose of any future renovations, alteration, decorations, installations to the demised premises and/or the Building, (ii) make repairs, alterations, improvements, additions or restorations which are reasonably necessary or desirable in connection with the operation of the Building, including, but not limited to, its electrical and fire safety systems, or (iii) perform work to comply with legal requirements, which work may include, among other things, improvements to the lobby and facade of the Building that may require that scaffolding and/or a sidewalk bridge be placed in front of the Building.  The work, entry and access described herein shall not constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of rent, or relieve Tenant from any of its obligations under this Lease, or impose any liability upon Landlord and Tenant hereby agrees to release Landlord of and from any claims (including without limitation, claims arising by reason of loss or interruption of business) provided that

16

Please Initial Here: Landlord_____ Tenant

Landlord shall use commercially reasonable good faith efforts to lessen adverse effects on Tenant's use and property in connection with the work described in this paragraph without an obligation to incur overtime or premium pay rates.

68.   Escalation Payment

Tenant shall pay as additional rent for each Lease Year subsequent to the first (1st) Lease Year, the sum ("Tenant's Escalation Payment") of (a) all Tenant's "Prior Escalation Payments" (as hereinafter defined) previously payable by Tenant pursuant to this Article 68 and (b) an amount equal to the product obtained by multiplying the Fixed Escalation Percentage set forth in Article 41 by the sum of (i) the Base Rent payable for the immediately preceding Lease Year and (ii) all of Tenant's Prior Escalation Payments under this Article. Tenant's Escalation Payment for each Lease Year shall be payable in twelve (12) equal monthly installments on the first day of each month during the Lease Year. "Tenant's Prior Escalation Payments" shall mean the sum of all amounts payable by Tenant pursuant to this Article 68 for all prior Lease Years. The Base Rent abatements set forth in Article 41 shall be disregarded when making computations of Tenant's Escalation Payment under this Article. Tenant's Escalation Payment is in lieu of an actual operating expense escalation formula in this lease. The Tenant's Escalation Payment shall be made in twelve (12) equal monthly installment on the first day of the month in the Lease Year to which the same shall relate.

69.   Tenant Work

Tenant covenants and agrees to perform and pay for all of the Tenant Work within eight (8) months of the Commencement Date, subject only to delays beyond Tenant's reasonable control. Tenant will coordinate with the base building expeditor to coordinate a filing scenario to the mutual benefit of Tenant and Landlord in order to expedite the Building Permit for Tenant's Work. Tenant to have permission (with consents of Landlord not to be unreasonably withheld or delayed) to relocate the fire stair landing door on the lower level and insert fire rated glass in the wall of the stairwell's ground floor vestibule (or remove the entire stairwell enclosure on the ground floor) with such installation of Tenant to comply with laws. Prior to using the exclusive elevator, Tenant will procure and keep in effect at Tenant's sole expense a maintenance contract in form and from a qualified servicing organization reasonably satisfactory to Landlord) for the Term of this lease with respect to the exclusive elevator serving the demised premises. Tenant shall provide Landlord with documentation and photo-type renderings of Tenant's proposed signage for review and approval of Landlord, such approval shall not be unreasonably withheld or delayed. Tenant's proposed signage is subject to Tenant obtaining Landmarks Preservation Commission approval at Tenant's expense.

Landlord to provide an allowance as part of the "Work Allowance" (described below) of up to $125,000.00 to Tenant for the installation of Tenant's air conditioning system subject to Landlord's approval of plans and specifications, such approval not to be unreasonably withheld. Payment to be made when such portion of Tenant's Work has been completed and paid for in full by Tenant.

Tenant to provide and install a sewer ejector and hot water heater and all related equipment in an area designated in the plan attached hereto and made a part hereof as Exhibit "B1".

Tenant to furnish Con Edison with a Gas load letter and arrange for gas service. Landlord will cooperate with Tenant in arranging for Con Edison gas service to be brought into the Demised Premises. Tenant will be responsible to provide the load letter with its gas requirements for Con Ed to establish a gas service to the Demised Premises. Tenant will be allowed to use the gas meter room within the building and will construct all associated rated construction, piping, booster and vents from the Con Ed service room into the demised premises as required by Con Ed and the New York City DOB.

All modifications to the existing sprinkler system necessary to accommodate Tenant's layout shall be performed by Tenant and approved by Landlord such approval not to be unreasonably withheld or delayed. Tenant to hook up to the existing sprinkler system downstream of Landlord provided OS&Y and flow and tamper valve. Tenant will hire landlord's vendor, Sirina Fire Protection for all fire alarm related work provided that Sirina Fire Protection's rates shall be competitive in the marketplace. All work to be completed in compliance with all applicable building codes and regulations affecting such installation.

17

Please Initial Here:  Landlord_____  Tenant_____

All fire protection work including hook-up to be done by Sirina Fire Protection.

As part of Tenant's Work to prepare the premises for its initial occupancy, Tenant is required to paint the exposed columns with as many coats of intrumescent fireproof paint or equivalent required and fill in around the top of each exposed column with enough layers of sheetrock to provide a two (2) hour fire rating for both the column and the portion of the ceiling that touches each column. Landlord shall be notified at completion of said fireproofing to inspect and confirm same before any further work in such areas shall proceed.

Tenant to pay a monthly sprinkler and central station alarm maintenance fee to Landlord of $100.00 per month (each) for a total of $200.00 per month.

70.   <u>Confidentiality</u>

Tenant covenants and agrees to keep all of the terms and conditions of this transaction (including, without limitation, the rents, term, and the fact that this lease has been signed and delivered) strictly confidential, provided however, that Tenant may disclose such information to its attorneys, accountants, the leasing agents referrred to in paragraph 46E, Tenant's members and any proposed Affiliates or Successors who need to know such information and have been made aware that such information is to be kept confidential. It is further agreed that information is not confidential that is or becomes generally available and known to the public other than as a result of a wrongful disclosure by the Tenant or anyone that Tenant is responsible for.

71.   <u>Guaranty</u>

It is a material inducement, consideration and condition to Landlord entering into this Lease that the guaranty attached hereto and made a part hereof (appearing at the top of page 6 of this lease) be signed and delivered by the Guarantor described therein without regard to the dates written or printed in the documents (or the order in which the parties have signed this Lease and the Guarantor have signed the guaranty), as the parties acknowledge and agree that, anything contained in this Lease to the contrary notwithstanding, Landlord will not deliver a fully executed original of this Lease (signed by Landlord and Tenant) to Tenant until after Landlord has received this Lease signed by Tenant and the guaranty signed by the Guarantor.

72.   <u>Patriot Act.</u>

Tenant represents and warrants to Landlord that: (a) Tenant is not, and shall not during the term of this lease become, a person or entity with whom Landlord is restricted from doing business under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 (commonly known as the "USA Patriot Act") and Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001 and regulations promulgated pursuant thereto, including persons and entities named on the Office of Foreign Asset Control Specially Designated Nationals and Blocked Person List (collectively, "Prohibited Persons"); (b) Tenant is not currently conducting any business or engaged in any transaction or dealing, or otherwise associated with, any Prohibited Persons in connection with the use or occupancy of the demised premises; and (c) Tenant shall not during the term of this lease engage in any transaction or dealing, or be otherwise associated with, any Prohibited Persons in connection with the use or occupancy of the demised premises. Tenant covenants and agrees to deliver to Landlord any certification or other evidence requested from time to time by Landlord in its reasonable discretion, confirming Tenant's compliance with this Article. Tenant hereby agrees to defend, indemnify, and hold harmless Landlord from and against any and all claims, damages, losses, risks, liabilities and expenses (including attorney's fees and costs) arising from or related to any breach of the foregoing certification. Simultaneously with delivery of any executed assignment or subletting agreement to Landlord, the assignee or sublessee, as applicable, must execute the above certification in writing and provide any other certification reasonably requested by Landlord related to the Patriot Act.

73.   WORK ALLOWANCE

The Tenant's Work in the lower level is described in Exhibit B-5, attached hereto and made a part hereof. Tenant shall not commence Tenant's Work until (i) final plans drawings and

18

Please Initial Here: Landlord_____ Tenant

specifications for Tenant's Work (which are consistent with Exhibit B-5) have been prepared by
Tenant at Tenant's expense, submitted by Tenant to Landlord, and approved by Landlord (such
approval not to be unreasonably withheld, conditioned or delayed); (ii) Landlord has approved
Tenant's general contractor and all other contractors, subcontractors and materialmen to be
involved in the performance of the Tenant Work and their insurance policies (such approval not
to be unreasonably withheld, conditioned or delayed); and (ii) all necessary building permits and
any other required governmental approvals have been issued for Tenant's Work. Landlord to
respond to Tenant's submission of plans within ten (10) days subject to delays beyond
Landlord's reasonable control.

Landlord represents that it has up to $520,400.00 (the "Work Allowance") which shall be
available for Landlord to draw on from a loan made by Investor's Bank for payment of costs for
Tenant's Work. Within fourteen (14) days of the date of execution of this lease, Tenant shall
place $200,000.00 in an escrow account (the "Escrow Account") reasonably satisfactory to
Landlord, which $200,000.00 shall be used to pay the initial costs for Tenant's Work, including
up $100,000.00 thereof for advance deposits required by Tenant's architect, engineer,
construction manager, expediter and general contractor pursuant to the construction contract
described below and related Hard Costs, filing fees and other Soft Costs payable in advance.
Promptly after execution and delivery of this lease (and in any event no later than one hundred
twenty [120] days after execution and delivery of this lease) Tenant shall enter into a
construction contract for the Tenant's Work with a general contractor reasonably satisfactory to
Landlord. Only Landlord shall be permitted to authorize disbursements from the Escrow
Account and the Work Allowance and such disbursements shall be made as provided below and
the review and approval of each Requisition by Landlord's construction manager.

Landlord hereby agrees to reimburse Tenant (or pay for Tenant to the appropriate payee entitled
to payment for Tenant's Work), within thirty (30) days upon request therefore, for the cost of
Tenant's Work. Such payment shall be made out of the Escrow Fund first and payments shall be
made by Landlord (but not in excess of the Landlord's Work Allowance of $520,400.00) once
the Escrow Fund has been exhausted. In connection with any request by Tenant for such
reimbursement or payment (the "Requisition"), Tenant shall submit to Landlord copies of the
invoices for completed work, partial or final waivers of lien (as the case may be) from all
contractors, subcontractors and materialmen involved in the performance of the Tenant Work
relating to the portion of the Tenant Work theretofore performed and materials theretofore
provided and for which previous disbursements and/or the requested disbursement has been or is
to be made (except to the extent such waivers of lien were previously furnished to Landlord),
and such other information and documentation as Landlord, in its good faith judgment, deems
necessary, including, but not limited to (i) copies of all receipts, invoices and bills for the work
completed and materials furnished in connection with the Tenant's Work and incorporated in the
demised premises which are to be paid from the requested disbursement or which have been paid
by Tenant and for which Tenant is seeking reimbursement; (ii) an AIA G702 certificate signed
by Tenant's licensed architect together with a statement signed by Tenant's Chief Financial
Officer, dated not more than ten (10) days prior to such Requisition, setting forth the following:
that the sum then requested is justly due to persons who have rendered services or furnished
materials for the work therein specified, and giving a brief description of such services and
materials and the several amounts due to each of said persons in respect thereof, and stating that
no part of such expenditure is being made the basis, in any previous or then pending prior
Requisition, for the receipt of the payment from the Escrow Account and/or the Work
Allowance, as the case may be, nor has such expenditure been previously paid out of the
proceeds of the Escrow Fund and/or the Work Allowance received by, or for the account of
Tenant under this Article, that the sum then requested in the Requisition does not exceed the
value of the services and materials described in the Requisition, and that, in their opinion, the
portion of the Tenant Work theretofore completed was performed in a good and workmanlike
manner and substantially in accordance with the plans, drawings and specifications previously
approved by Landlord and in compliance with all legal requirements; that except for the sum
then requested in such Requisition, there is no outstanding indebtedness (except for withholding
by Tenant of not more than ten [10%] percent of the cost of the Tenant Work for any Requisition
other than the final Requisition) known to the persons signing such certificate, which is then due
for labor, wages, materials, supplies or services in connection with the Initial Work which, if
unpaid, might immediately become the basis of a vendor's, mechanic's, laborer's or material
man's statutory or similar lien upon such work or upon the Real Property and Building or any

19

Please Initial Here: Landlord_____ Tenant_____

part thereof or upon Tenant's leasehold interest; and the percentage of the Tenant Work theretofore completed and the then total projected cost of the Tenant Work. Upon Tenant's compliance with the foregoing provisions hereof and Tenant exhausting the Escrow Fund to pay for costs for Tenant's Work, Landlord shall cause to be paid to the persons entitled to payment named in Tenant's Requisition, the respective amounts stated therein to be due to them provided that Landlord's architect and construction manager review and approve each such Requisition. However, the last $52,400.00 of the Work Allowance shall not be paid to, or for Tenant unless and until Tenant submits the last requisition (the "Final Requisition") based on the Tenant's Work having been completed, final lien waivers having been received, and all sign-offs from governmental agencies having been issued.

Landlord shall respond to Tenant's monthly Requisition promptly after it has been submitted and any rejection thereof shall explain in reasonable detail the reasons for such rejection and the amounts in question to give Tenant sufficient information to correct the submission.

The foregoing notwithstanding, in no event shall the Work Allowance be used to pay "Soft Costs" in excess of $78,060.00 (with Tenant to be solely responsible for payment of any such excess), and the Work Allowance shall only be used to pay Softs Costs up to $78,060.00 and "Hard Costs". "Soft Costs" means architectural, design, construction management, engineering and expediter fees and filing expenses. "Hard Costs" means the cost of labor and materials used to perform leasehold improvements exclusive of any Soft Costs and costs for furniture, trade fixture and removable personal property. Any and all costs and expenses relating to the Tenant's Work in excess of the Work Allowance shall be paid for solely by Tenant.

Nothing contained herein shall require Landlord to approve any payment to Tenant as payee from the Work Allowance or the Escrow Fund other than as a reimbursement for any payment made by Tenant which is properly subject to reimbursement as provided herein; in all other instances payment shall be made to the person or entity entitled to payment on account of services render and labor and materials supplied as part of the Tenant Work.

In no event shall Landlord's payment obligations under this Article exceed $520,400.00, it being expressly understood and agreed that all costs for Tenant's Work in excess of $520,400.00 shall be the sole responsibility of Tenant.

74.    PARTNERSHIP TENANT

        If Tenant is a general partnership (or if this lease shall be assigned to, or held by two (2) or more persons or entities, individually and/or as co-partners of a partnership), any such partnership and such persons or entities are referred to in this Article as a "Partnership Tenant," then the following provisions of this Article shall apply to such Partnership Tenant: (i) the liability of each of the parties comprising a Partnership Tenant (e.g., Scorpion Fitness Inc. and Scorpion Club Ventures LLC) shall be joint and several, and (ii) each of the parties comprising a Partnership Tenant (e.g., Scorpion Fitness Inc. and Scorpion Club Ventures LLC) hereby consents in advance to, and agrees to be bound by, any written instrument which may hereafter be executed, changing, modifying or discharging this Lease, in whole or in part, or surrendering all or any part of the demised premises to Landlord, and by any notices, demands, requests or other communications which may hereafter be given by a Partnership Tenant or by any of the parties comprising a Partnership Tenant, and (iii) any bills, statements, notices, demands, requests or other communications given or rendered to a Partnership Tenant and to all such parties shall be binding upon a Partnership Tenant and all such parties, and (iv) if a Partnership Tenant shall admit new partners (e.g., if a third entity shall be added as a lessee of this lease in addition to, or in lieu of Scorpion Fitness Inc. and/or Scorpion Club Ventures LLC subject to, and in accordance with the applicable provisions of this lease), all of such new partners (i.e., any such new or additional entity becoming a new or additional lessee under this Lease) shall, by their admission to a Partnership Tenant, be deemed to have assumed performance of all of the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed as if each of them had signed this lease as one of the original parties comprising the Tenant, and (v) a Partnership Tenant shall give prompt notice to Landlord of the admission of any such new partners, and upon demand of Landlord, shall cause each such new partner to execute and deliver to Landlord an agreement in form satisfactory to Landlord, wherein each such new partner shall assume performance of all the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed as aforesaid (but neither Landlord's failure to request any such

20

Please Initial Here: Landlord_____ Tenant_____

agreement nor the failure of any such new partner to execute or deliver any such agreement to Landlord shall vitiate the provisions of subdivision (iv) of this Article). The provisions of this Article are not intended to create any personal liability of any members of a limited liability company that is a Tenant under this lease or any personal liability of any shareholders of a corporation that is a Tenant under this lease.

21

Please Initial Here: Landlord_____ Tenant

EXHIBIT #1

Form of Notice of Substantial Completion

Dino & Sons Realty Corp.
1590 Troy Avenue
Brooklyn, NY 11234

BY FEDERAL EXPRESS
Date:_____

Scorpion Fitness Inc.
Scorpion Club Ventures LLC
325 Fifth Avenue
New York, NY 10016
Attention: Mr. John Shams

Re:    lease (the "Lease") dated _____ by and between Dino & Sons Realty Corp., as
       Landlord, and, Scorpion Fitness Inc. and Scorpion Club Ventures LLC, as Tenant, for
       premises at 220 Fifth Avenue, New York, NY

Gentlemen:

Please take notice that the Landord's Work described in the lease has been substantially
completed and Landlord hereby offers you possession of the premises subject to, and in
accordance with the terms and conditions of the Lease.

Very truly yours,
Dino & Sons Realty Corp.

By:_____
Name:
Title:

Please Initial Here: Landlord_____ Tenant

Exhibit "A"

The Demised Premises

Not to scale; all dimensions approximate; subject to actual conditions.



Please Initial Here:  Landlord_____  Tenant

Execution                              12/19/2014                          Page 32 of 47



220 5TH AVENUE, NEW YORK, NY - LOWER LEVEL PREMISES

LOWER LEVEL

Please Initial Here: Landlord_____ Tenant_____

Execution                    12/19/2014                    Page 33 of 47



MEZZANINE

25

Please Initial Here: Landlord_____ Tenant_____

Exhibit "B"

Landlord's Work

1) Demolish the entire premises including removing all drop ceilings, ceiling hangers, old electrical conduits, dead plumbing pipes, HVAC ductwork and HVAC equipment. Demolish existing bathrooms (including removal of existing step-up to deliver at grade), kitchenette and all associate plumbing, all non-load bearing walls as well as remove the terracotta column casings of the first six (6) columns shown in plan attached as Exhibit "B2". Demolition to also include the staircase enclosure in the ground floor vestibule, the wall mirrors and wonder-board mounting, the radiator enclosure on the lower level, and the AC machine in the mezzanine.

2) Deliver the ground, mezzanine and cellar floors in broom clean condition.

3) The ground and cellar floors will be delivered with 100 lbs PSF floor load.

4) Encapsulate the entire premises including filling all breaches in the floors and ceilings so to be delivered with two hour fire separation from adjoining spaces in compliance with all applicable building codes having jurisdiction. Sheetrock walls shall be taped and ready for paint. Fire stopping shall be in compliance with all applicable codes having jurisdiction.

5) Deliver premises free of hazardous containing materials (HCM), including asbestos, lead and mold or encapsulate same. Landlord to provide an ACP-5 for Landlord's Work.

6) Complete the installation of a storefront display window and double door entrance to the premises and obtain all necessary approvals required for such installation. The display window will be delivered encapsulated in sheetrock with a lockable access door.

7) Provide two code compliant means of egress from cellar floor to street level. All doors and frames to be code compliant including fire rated door buck and FPSC "B" label door with NYC UL approved panic hardware. Landlord to provide code compliant egress stairs from mezzanine to street level.

8) Construct a closet around the exposed electrical panels near the lobby stair as indicated on the plan attached hereto and made a part hereof as Exhibit "B3".

9) Skim coat the ceilings and walls of the lower level and mezzanine and the walls of the ground floor and lower level delivering a smooth finish. The ceiling area identified in the plan and attached as exhibit B-4 will be left as-is. All Q-decking in the vault area will be covered in sheetrock and the vaulted ceilings are to be parched, skim coated and are to receive a waterproof membrane so to be delivered as uniform and clean as possible. *using Sound Insulation Material*

[Landlord shall encapsulate Belgian Beer Café's HVAC Unit, with such encapsulation to be done in cooperation with Tenant's Work (and this item is not part of the Landlord's Work that has to be substantially completed prior to Commencement of the Term).]

10) Furnish a steam coil for Tenant to install and use with their HVAC system to blow heat during normal business hours. [Landlord to maintain steam pipes after the Commencement Date and for the balance of the Term but Tenant shall be responsible for any damage to the pipe caused by Tenant.]

11) Repair existing metal plates covering the under floor steam pipes and provide and install new diamond plate steel floor plates where necessary. Provide insulation under the metal plates, where practicable.

12) Landlord to deliver an operable, code compliant, ADA approved elevator (in a condition where it is able pass an inspection) for Tenant's exclusive use between the ground floor and lower level. Landlord will provide and install new interior panels, flooring and lighting

26

Please Initial Here: Landlord_____ Tenant_____

with Tenant's input on colors and finishes. [1]

13) Landlord to deliver weather tight core and shell with particular consideration of the vault space walls and ceilings.

14) Landlord to deliver all exposed structural steel beams and columns structurally sound.

15) Landlord to fireproof all exposed ceiling beams and deliver flat, smooth and ready to paint finishes as per adjacent surfaces.

16) Landlord to relocate mezzanine egress stair into common freight elevator corridor independent of Tenant's ground floor entrance vestibule. If practical, feasible and lawful, in Landlord's reasonable determination, Landlord will install a new door to mezzanine stair for Tenant's direct access to mezzanine space

17) Exterior facade shall be in accordance with Landlord's Landmark Preservation Commission approved drawings.

18) Storefront glazing system/finishes shall be in accordance with current Energy Codes and LPC approvals.

19) Landlord to deliver a 600 amps at 120/208v 3ph 4w service, including combination CT, main switch and meter bridge (1) 600amp service detail. 42 in a circuit main distribution panel. 20) Landlord to supply Tenant with a connection points in to the Building's Class E system for Tenants hook-up.

21) Landlord will install a separate water meter to meter tenant's water usage.

22)    Landlord will install a panic bar with alarm on the emergency egress door in basement leading from freight elevator vestibule to the premises. There are to be emergency push bars on 1) the door leading from the lower level of the premises to the 2nd means of egress and 2) from the freight elevator vestibule to the lower level premises.

23) Incoming cold water line shall be a minimum of 2" or sized greater to be in accordance with code requirements at 50 psi.

24) Landlord shall insulate all existing water lines running through the demised premise.

25) Landlord to provide 4" sanitary waste sewer connection to sub-cellar sewer for tenant to install an ejection system.

26) Landlord to provide 4" connection to building domestic sewer line for tenants hook up.

27) Gas shut off valve for exhaust hood of restaurant above to be relocated outside the demised premises to meter room.

28) Landlord shall provide code compliant connection to base building sprinkler service on the ground floor of the premises [which connection shall be independent of Belgian Beer Café].

29)    Restore all existing radiators to working order as well as strip and re-paint each radiator.

---

[1]  The elevator work shall be completed within ninety (90) days of the substantial completion of the rest of Landlord's Work, subject only to delays beyond Landlord's reasonable control, with Tenant to provide Landlord with reasonable access to the demised premises if and as necessary for such purpose. The substantial completion of the Elevator Work shall not be deemed to be part of the Landlord's Work that has to be substantially completed prior to the Commencement Date.

27

Please Initial Here:  Landlord_____ Tenant

Execution                            12/19/2014                            Page 36 of 47

30) If practical, lawful and feasible in Landlord's reasonable judgment, Landlord shall use reasonable good faith best efforts to reroute sewer pipe in 26th Street vault area.

Tenant to provide Landlord with detailed punch-list within one week after substantial completion of Landlord's Work. Landlord shall complete the punch-list items that relate to Landlord's Work expeditiously but not later than forty-five (45) days after receipt of the punch-list subject only to delays beyond Landlord's reasonable control.

Landlord shall perform the following work at Landlord's expense after the Commencement Date with Tenant to provide Landlord with reasonable access to the demised premises if and as necessary for such purpose:

Landlord shall provide and install in building setback a code compliant platform for placement of condensing units. Landlord to provide and install code compliant ducts to reroute discharge air from two (2) existing condenser units in setback in a manner so that discharge from existing units does not interfere with adequate performance of new units to be provided by Tenant that will be placed on platform by Tenant. Such work to be completed within sixty (60) days after Landlord has approved Tenant's plans subject only to delays beyond Landlord's reasonable control.

In connection with Tenant's AC unit installation, Landlord to make vertical penetrations for condenser lines and air exchange duct(s) within thirty (30) days after Landlord has approved Tenant's plans subject only to delays beyond Landlord's reasonable control.

All water supplies to have RPZ valves and back flow-preventer, if required by code, and water-pressure sufficient for normal and proper operation of all water fixtures.

Landlord to install gas meter promptly after Con Edison has completed work to deliver gas to the demised premises. Such meter work to be completed within thirty (30) days fater Con Edison has completed its work in delivering Tenant's requested gas service to the meter room.

28
Please Initial Here: Landlord_____ Tenant

EXHIBIT "B1"

Hot water heater ejector pit.



Please Initial Here:  Landlord _____  Tenant

Exhibit B2



Please Initial Here: Landlord_____ Tenant_____

Exhibit B3



Please Initial Here: Landlord_____ Tenant_____

Exhibit B4



Please Initial Here: Landlord_____ Tenant_____

Execution                    12/19/2014                    Page 41 of 47

**EXHIBIT B5**



Please Initial Here:  Landlord_____  Tenant_____

Exhibit "C"

Tenant Construction Rules and Regulations

The following rules and regulations must be followed while working at the building:

1)    All general contractors and subcontractors must be approved by the management.

2)    All trades must be compatible with existing building labor and jurisdictions.

3)    Plans and specifications must be reviewed and approved by the management prior to work commencement.

4)    All insurance certificates must be delivered to the building office before any work commences (Public Liability and Workers' Compensation).

5)    The workday is Monday to Friday, 8:00 a.m. to 5:00 p.m. Overtime standby for one freight elevator operator or one building engineer shall be charged at the then prevailing hourly rate for the building which is currently $150/hour with a four (4) hour minimum. Requests to work after hours and on weekends must be made in writing 24 hours in advance. All after hour and weekend work must be supervised by a building employee.

6)    All demolition shall be done after normal building hours.

7)    Debris shall be removed daily off construction floor and out of building.

8)    A $500.00 clean-up deposit is required (refundable) for every approved project.

9)    Protection of public areas must be set up, e.g.: dust control, carpet protection, wall protection and public toilets.

10)    Maximum daytime delivery shall be one hour per tenant project.

11)    All trades must sign in/out daily and use the freight car to enter and leave the job site. Use of the tenant's restrooms is prohibited. Trades shall use the bathroom facilities as designated by Landlord or Building Manager.

12)    All construction shall comply with the most recent New York City Building Codes.

13)    All pertinent construction work permits shall be filed for and submitted to management before any work may proceed.

14)    Upon completion of any alteration requiring NYC Department of Buildings approval, a complete set of signed/sealed as-built drawings and Cadd must be submitted to management. All required certificates of completion shall be obtained from the proper City Agency and submitted to the Building Manager.

15)    Intentionally Deleted

16)    All through floor pipe work, cutting, chopping, channeling or boring must be done on overtime and have prior written approval of upper or lower floor tenant and management.

17)    All trades requiring licenses (e.g.: plumbers, electricians) must present a valid license to building management prior to entering the work site.

18)    If any tenant alteration affects the current fire alarm system to the extent of speakers, strobes, pull stations, warden stations or any other accessories to the system, the tenant shall be responsible to modify and upgrade the system to comply with all current codes. All work shall be performed by the contractor designated by Building Management.

NOTE: All electrical, plumbing and HVAC must be field checked by building engineer before any tie-ins can be made.

Insurance requirements for any Contractor performing work for Tenant:

A Certificate of Insurance should be supplied by the general contractor naming Landlord, Landlord's Mortgagee and Managing Agent as Additional Named Insureds as respects the General Contractors and covering its sub-contractors' Commercial General Liability Policies, with the following minimum limits:

> $3,000,000 – (PER OCCURRENCE) SUBJECT TO;
> $3,000,000 – GENERAL AGGREGATE [*ON A PER PROJECT BASIS]
> $3,000,000 – PRODUCTS – COMPLETED OPERATIONS
> $5,000,000 – PERSONAL INJURY

34

Please Initial Here: Landlord_____ Tenant

Execution                    12/19/2014                    Page 43 of 47

$  100,000 – FIRE, DAMAGE LEGAL LIABILITY
$    5,000 – MEDICAL EXPENSE LIMIT

The following endorsements should be evidenced:

1.    Notice of Occurrence
2.    Knowledge of Occurrence
3.    Unintentional Errors and Omissions

Evidence of the following should be included on the Certificate:

1.    Commercial Automobile Liability with a minimum Combined Single
      Limit of $1,000,000 for "bodily injury" and "property damage".

2.    Excess Umbrella Liability at a minimum limit of $5,000,000 with a self-
      insured retention not to exceed $10,000.

3.    Workers Compensation & Employers Liability

4.    New York State Disability Benefits (DBL)

35

Please Initial Here:  Landlord_____ Tenant

EXHIBIT "D"

Building Rules and Regulations

1.    The rights of tenants in the entrances, corridors and elevators of the Building are limited to ingress to and egress from the tenant's premises for the tenants and their employees, licensees and invitees, and no tenant shall use, or permit the use of, the entrances, corridors, or elevators for any other purpose. No tenant shall invite to the tenants premises, or permit the visit of, persons in such numbers or under such conditions as to interfere with the use and enjoyment of any of the entrances, corridors, elevators and other facilities of the Building by other tenants. Fire exits and stairways are for emergency use only, and they shall not be used for any other purpose by the tenants, their employees, licensees or invitees. No tenant shall encumber or obstruct, or permit the encumbrance or obstruction of any of the sidewalks, entrances, corridors, elevators, fire exits or stairways of the Building. The Landlord reserves the right to control and operate the public portions of the Building and the public facilities, as well as facilities furnished for the common use of the tenants, in such manner as it deems best for the benefit of the tenants generally.

2.    The Landlord may refuse admission to the Building outside of ordinary business hours to any person not known to the watchman in charge or not having a pass issued by the Landlord or the tenant whose premises are to be entered or not otherwise properly identified, and may require all persons admitted to or leaving the Building outside of ordinary business hours to register. Any person whose presence in the Building at any time shall, in the judgment of the Landlord, be prejudicial to the safety, character, reputation and interests of the Building or of its tenants may be denied access to the Building or may be ejected therefrom. In case of invasion, riot, public excitement or other commotion, the Landlord may prevent all access to the Building during the continuance of the same, by closing the doors or otherwise, for the safety of the tenants and protection of property in the Building. The Landlord may require any person leaving the Building with any package or other object to exhibit a pass from the tenant from whose premises the package or object is being removed, but the establishment and enforcement of such requirement shall not impose any responsibility on the Landlord for the protection of any tenant against the removal of property from the premises of the tenant. The Landlord shall, in no way, be liable to any tenant for damages or loss arising from the admission, exclusion or ejection of any person to or from the Tenant's premises or the Building under the provisions of this rule. Canvassing, soliciting or peddling in the Building is prohibited and every tenant shall cooperate to prevent the same.

3.    No awnings or other projections over or around the windows shall be installed by any tenant, and only such window blinds as are supplied or permitted by the Landlord shall be used in a tenant's premises without Landlord's prior written consent. Linoleum, tile or other floor covering shall be laid in a tenant's premises only in a manner approved by the Landlord.

4.    The Landlord shall have the right to prescribe the weight and position of safes and other objects of excessive weight, and no safe or other object whose weight exceeds the lawful load for the area upon which it would stand shall be brought into or kept upon a tenant's premises. If, in the judgment of the Landlord, it is necessary to distribute the concentrated weight of any heavy object, the work involved in such distribution shall be done at the expense of Tenant and in such manner as the Landlord shall determine. The moving of safes and other heavy objects shall take place only outside of ordinary business hours upon previous notice to the Landlord, and the persons employed to move the same in and out of the Building shall be reasonably acceptable to the Landlord and, if so required by law, shall hold a Master Rigger's license. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only in the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by the Landlord. Arrangements will be made by the Landlord with any tenant for moving large quantities of furniture and equipment into or out of the building.

5.    No machines or mechanical equipment of any kind, may be installed or operated in any tenant's premises without Landlord's prior written consent, which consent shall not be unreasonably withheld or delayed, and in no case (even where the same are of a type so excepted or as so consented to by the Landlord) shall any machines or mechanical equipment be so placed or operated as to disturb other tenants but machines and mechanical equipment which may be permitted to be installed and used in a tenant's premises shall be so equipped, installed and maintained by such tenant as to prevent any disturbing noise, vibration or electrical or other interference from being transmitted from such premises to any other area of the Building.

36

Please Initial Here:  Landlord_____ Tenant_____

6.    No noise, including the playing of any musical instruments, radio or television, which, in the judgment of the Landlord, disturbs other tenants in the Building, shall be made or permitted by any tenant, and no cooking shall be done in the tenant's premises, except as contemplated by this lease or as otherwise expressly approved by the Landlord. Nothing shall be done or permitted in any tenant's premises, and nothing shall be brought into or kept in any tenant's premises, which would impair or interfere with any of the Building services or the proper and economic heating, cleaning or other servicing of the Building or the premises, or the use or enjoyment by any other tenant of any other premises, nor shall there be installed by any tenant any ventilating, air conditioning, electrical or other equipment of any kind which, in the judgment of the Landlord, might cause any such impairment or interference. No dangerous, inflammable, combustible or explosive object or material shall be brought into the Building by any tenant or with the permission of any tenant. Any cuspidors or similar containers or receptacles used in any tenant's premises shall be cared for and cleaned by and at the expense of the tenant.

7.    No acids, vapors or other materials shall be discharged or permitted to be discharged into the waste lines, vents or flues of the Building which may damage them. The water and wash closets and other plumbing fixtures in or serving any tenant's premises shall not be used for any purpose other than the purposes for which they were designed or constructed, and no sweepings, rubbish, rags, acids or other foreign substances shall be deposited therein.

8.    All entrance doors in each tenant's premises shall be left locked and all windows shall be left closed by the tenant when the tenant's premises are not in use. Entrance doors shall not be left open at any time.

9.    Hand trucks not equipped with rubber tires and side guards shall not be used within the Building.

10.    All windows in each tenant's premises shall be kept closed and all blinds therein, if any, above the ground floor shall be lowered when and as reasonably required because of the position of the sun, during the operation of the Building air-conditioning system to cool or ventilate the tenant's premises.

11.    The Landlord reserves the right to rescind, alter or waive any rule or regulation at any time prescribed for the Building when, in its judgment, it deems it necessary, desirable or proper for its best interest and for the best interests of the tenants, and no alteration or waiver of any rule or regulation in favor of one tenant shall operate as an alteration or waiver in favor of any other tenant. The Landlord shall not be responsible to any tenant for the non-observance or violation by any other tenant of any of the rules and regulations at any time prescribed for the Building.

12.    No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any tenant on any part of the outside of the Tenant's premises or Building without the prior written consent of Landlord. Landlord may remove same without liability and may charge the expense incurred by such removal to the Tenant when violating this rule.

13.    No showcases or other articles shall be put in front of or affixed to any part of the exterior of the Building, nor placed in the halls, corridors or vestibules, nor shall any article obstruct any air-conditioning supply or exhaust without the prior written consent of Landlord.

14.    No Tenant shall mark, paint, drill into, or in any way deface any part of the part of the Demised Premises or the Building, except with the prior written consent of Landlord. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Landlord, and as Landlord may direct.

15.    No bicycles, vehicles or animals of any kind shall be brought into or kept by Tenant in or about the Demised Premises or the Building.

16.    No Tenant shall obtain or accept for use in its premises, towels, barbering, boot blacking, floor polishing, lighting maintenance, cleaning or other similar service from any persons not authorized by Landlord in writing to furnish such services. Such services shall be furnished only at such hours, in such locations within Tenant's premises and under such regulation as may be fixed by Landlord.

17.    No window or other air-condition units shall be installed by any Tenant without the consent of the Landlord and only such window coverings as are supplied or are reasonably permitted by Landlord shall be used in Tenant's premises.

18.    All entrance doors in each Tenant's premises shall be left locked when the Tenant's premises are not in use. Entrance doors shall not be left open at any time.

37

Please Initial Here:  Landlord_____   Tenant_____

Exhibit "E"

LIMITED PERSONAL GUARANTY

(1) As an inducement to DINO & SONS REALTY CORP. ("Landlord") to accept a lease agreement dated December 19, 2014 (the "Lease") between Landlord, as lessor, and SCORPION FITNESS INC. and SCORPION FITNESS LLC, as lessees, for space consisting of part of the ground floor, mezzanine and lower level (the "demised premises") at 220 Fifth Avenue, New York, NY, the undersigned individual(s) JOHN SHAMS (the "Guarantor") hereby guarantees to Landlord the payment of all Annual Base Rent, and any and all other rent and additional rent, and any and all damages, costs, attorneys' fees, and expenses payable by the "Tenant" (as defined below) under the Lease through the "Surrender Date" (defined below). As used herein, the "Tenant" means and includes SCORPION FITNESS INC. and SCORPION CLUB VENTURES LLC jointly and severally, and any and all of its or their permitted successors or assigns, if there are any, and any party claiming rights in or to the demised premises or the Lease under or through SCORPION FITNESS INC. and/or SCORPION CLUB VENTURES LLC or any of its successors or assigns at any time during or after the term of the Lease. Nothing contained herein shall alter the assignment and subletting provisions of the Lease or modify the Lease in any other manner.

(2) The purpose of this limited Guaranty is to assure Landlord (and Landlord's successor and assigns) that the payment of all rent and additional rent (including, but not limited to, Annual Base Rent and additional rent for any and all damages, costs, fees and expenses) accruing under the Lease through the Surrender Date shall be made by the Guarantor if the same is not paid by Tenant. The "Surrender Date" means the date on which Tenant has given Landlord possession of the demised premises broom clean and free of all liens, claims, damages, occupants and personal property and otherwise in the condition required under the Lease upon expiration of the term of the Lease and Tenant has paid all Annual Base Rent and additional rent for any and all other charges accrued under the Lease through the last day of the month in which the Surrender Date shall occur, and an effective instrument of surrender of the demised premises has been signed and delivered by Tenant to Landlord (without prejudice to Landlord's rights to recover from Tenant the Annual Base Rent and any and all additional rents for the unexpired balance of the term of the Lease as provided in the Lease) in form reasonably satisfactory to Landlord (containing confirmation that Tenant is relinquishing all rights of Tenant and any person claiming under or through Tenant to have possession of the demised premises) on ninety (90) days prior written notice. Nothing contained herein or in any such instrument shall relieve Tenant of liability to Landlord at any time (whether before or after the Surrender Date), and any liability of the Guarantor for any claims of Landlord against Tenant arising under the Lease on or before the Surrender Date shall survive the Surrender Date. The foregoing notwithstanding, in no event shall the Surrender Date occur prior to the date that Landlord has collected twelve (12) months of Base Rent.

(3) Any security deposit under the Lease shall not be credited against amounts payable by Tenant, or by Guarantor, under the terms of this Guaranty. The acceptance by Landlord of payments under this Guaranty or the acceptance of a surrender of the demised premises shall not be deemed a release or waiver by Landlord of any obligation of the Tenant under the Lease or the Guarantor under this guaranty.

(4) This Guaranty is absolute and unconditional, it is a guaranty of payment and performance, not of collection, and Guarantor's liability hereunder shall be primary. If there is more than one person or entity signing this Guaranty as the Guarantor, the liability of each of them shall be joint, several and personal. This Guaranty may be enforced without the necessity of resorting to or exhausting any other security or remedy, without the necessity at any time of having recourse to Tenant and without having commenced any action against Tenant or having obtained any judgment against Tenant. The validity of this Guaranty shall not be affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord under the Lease. Guarantor agrees that this Guaranty shall remain in force and effect as to any assignment, transfer, renewal, modification or extension of the Lease and for any holdover period after expiration or termination of the Lease. No action or inaction of Landlord or Tenant shall affect the obligations of Guarantor hereunder. The Guarantor waives notice of any and all defaults by Tenant in the payment of annual base rent, additional rent, or any other charges, and waives notice of any and all defaults by Tenant in the performance of any of the terms of the Lease on Tenant's part to be performed. The Lease may be modified without Guarantor's consent and any such modification signed by Landlord and Tenant shall not release the Guarantor.

(5) Until all the terms, covenants and conditions in the Lease on the Tenant's part to be paid, kept, performed and observed are fully paid, kept, performed and observed, the Guarantor: (a) shall have no right of subrogation against the Tenant by reason of any payments or acts of performance by the Guarantor, in compliance with the obligations of the Guarantor hereunder; (b) waives any right to enforce any remedy which the Guarantor now or hereafter shall have against the Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of the Guarantor hereunder; and (c) subordinates any liability or indebtedness of the Tenant now or hereafter held by the Guarantor to the obligations of the Tenant to Landlord under the Lease.

38

Please Initial Here: Landlord_____ Tenant_____

Execution                          12/19/2014                          Page 47 of 47

(6) If Tenant becomes insolvent or shall be adjudicated a bankrupt or shall file for reorganization or similar relief or if such petition is filed by creditors of Tenant, under any present or future Federal or State law or if the Lease is terminated or Tenant's obligations otherwise discharged in any bankruptcy proceeding, Guarantor's obligations hereunder may nevertheless be enforced against the Guarantor.

(7) The Guarantor covenants, warrants and represents that: it has the power and authority to enter into this agreement and that its obligations as the Guarantor will be enforceable under the laws of the State of New York; it is entering into this agreement for a business purpose of, and benefit to the Guarantor; Tenant is owned and/or controlled by the Guarantor; any financial or other information furnished to Landlord about Guarantor and/or Tenant is true, complete and correct in all respects; and Tenant is a validly formed corporation and limited liability company doing business in the State of New York having full power and authority to enter into and perform the Lease and it has duly executed and delivered the Lease; neither Tenant nor Guarantor is insolvent or the debtor, defendant or respondent in any pending bankruptcy, receivership, insolvency or other creditor's action or proceeding.

(8) This Guaranty shall be governed by, and construed in accordance with, the laws of the State of New York without regard to conflicts of law or any rule which might apply the laws of any other jurisdiction. GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OR RELATING TO THIS GUARANTY. Anything contained herein to the contrary notwithstanding, in addition to, and not in lieu of, the Guarantor's liability set forth above, Guarantor will pay (i) attorneys' fees, court costs and other expenses incurred by Landlord in enforcing this Guaranty, (ii) the amount of any rent abatement, work allowance or concession granted to Tenant and (iii) Landlord's unamortized costs (computed on a straight line basis over a useful life corresponding to the entire term of the Lease) for (A) brokerage commissions for the Lease and (B) any alterations performed for Tenant or by Tenant if and to the extent paid for by Landlord in connection with the Lease. Guarantor hereby agrees to be subject to *in personam* jurisdiction in any court of appropriate subject matter jurisdiction located in the City, County and State of New York for any action brought by Landlord against the Guarantor arising out of, or relating to this guaranty, provided that copies of the summons and complaint are sent by certified mail, return receipt requested, to the Guarantor at the address of the Guarantor herein set forth (or c/o Tenant at the demised premises if there is no address of the Guarantor set forth below) or at such other address as the Guarantor may designate as its address for notices on ten (10) days prior notice in writing sent by certified mail, return receipt requested, to Landlord. The unenforceability or invalidity of any provision hereof shall not impair the enforceability and validity of the remainder of this Agreement.

(9) All terms and provisions herein shall inure to the benefit of the assigns and successors of Landlord and shall be binding upon the heirs, successors and assigns of Guarantor.

(10) Notwithstanding the date on which this guaranty is signed and the date that the Lease is signed, nor the order in which those documents are signed, the Guarantor acknowledges and agrees that Landlord will not sign and deliver the fully executed Lease to Tenant unless and until after Landlord has received checks for the first month's' rent and the security deposit, the Lease signed by Tenant, and this instrument signed and acknowledged by the Guarantor.

IN WITNESS WHEREOF, the undersigned Guarantor has signed this Guaranty on the 22 day of Dec 2014.

JOHN SHAMS
Social Security No.
Address for Notices. _____

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT

State of _____ )

County of _____ )   ss.:

On the 22 day of December, 2014, before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

MICHAEL PINNEY
Notary Public, State of New York
No. 01PI6126015
Qualified in Bronx County
Commission Expires April 25, 2017

_____
Notary Public

Please Initial Here: Landlord_____ Tenant _____